# UNITED STATES
# DISTRICT COURT
# WESTERN DISTRICT OF
# KENTUCKY

## PADUCAH DIVISION

*ELECTRONICALLY FILED*

COURTNEY HAMILTON                                          PLAINTIFF

v.                          **VERIFIED COMPLAINT**

JULIE CAMPBELL
(sued in her individual capacity)                    Civil Action No. 5:24-cv-128-BJB

SERVE:   Julie Campbell
         Executive Director
         Kentucky Board of Cosmetology
         1049 U.S. HWY 127
         Frankfort, KY 40601

-and-                                                       DEFENDANTS

TANYA SHROUT
(sued in her individual capacity)

SERVE:   Tanya Shrout
         123 Old Soldiers Lane
         Frankfort, KY 40601

-and-

SHAWNTE ELERY
(sued in her individual capacity)

SERVE:   Shawante Elery
         747 S. 43rd Street

1

Louisville, KY 40211

-and-

LEE ANN BREWER
(sued in her individual capacity)

SERVE: Lee Ann Brewer
       194 Blue Ridge Drive
       Frankfort, KY 40601

-and-

MARGARET MEREDITH
(sued in her individual capacity)

SERVE: Margaret Meredith
       416 Beaumont Avenue
       Harrodsburg, KY 40330

-and-

ZACHARY CASA
(sued in his individual capacity)

SERVE: Zachary Casa
       3812 Mimosa Lane
       Lexington, KY 40517

-and-

BRIDGET TEALL
(sued in her individual capacity)

SERVE: Bridget Teall
       Paul Mitchell Beauty School
       3644 Boston Road
       Lexington, KY 40514

-and-

TRACY MCDANIEL
(sued in her individual capacity)

SERVE: Tracy McDaniel
West Kentucky Community and Technical College
4810 Alben Barkley Drive
Paducah, KY 42001


-and-


MICKEY HOBBS
(sued in his individual capacity)

SERVE: Mickey Hobbs
1720 Fairway Drive
Lexington, KY 40502

Comes now the Plaintiff, Courtney Hamilton, by counsel, and for her complaint against the Defendants state as follows:

## I. INTRODUCTION

1.  This is a claim for monetary damages under 42 U.S.C. § 1983 and Kentucky common law against several individuals associated with the Kentucky Board of Cosmetology (KBC): Julie Campbell, current executive director; Tanya Shrout, current executive staff advisor; Lee Ann Brewer, school hour coordinator; Shawante Elery, current inspector; Margaret Meredith, former board chair; and KBC members Zachary Casa, Bridget Teall, Micky Hobbs, and Tracy McDaniel.

2.  Plaintiff attended cosmetology school in 2020 where Defendant Tracy McDaniel was an instructor. Conflict arose between them during this period. After Plaintiff obtained her license and opened Meraki Beauty School on March 18, 2022, she was never given equal footing with her white peers. In fact, upon orders by Defendant Campbell, KBC staff conspired with one another to completely sabotage the Plaintiff's successful business.

3.  Despite state regulations requiring KBC to inspect schools biannually, Plaintiff's beauty school underwent 12 inspections or audits within its first year of operation, all in front of customers and students, and was subjected to an baseless and damaging investigation. These inspections, orchestrated by Defendant Campbell, were racially discriminatory and detrimental to her business, ultimately causing its closure.

4.  In addition to racial targeting, Plaintiff accuses Defendant Campbell of failing to establish adequate policies and procedures for inspections, audits, and regulatory compliance, and she also failed to train and supervise her staff to protect Plaintiff's rights.

5. Defendants Campbell, Brewer, Elery, Shrout, and Meredith initiated numerous unjustified administrative investigations, selectively applied laws, issued citations without cause, disregarded Plaintiff's appeals, and pursued allegations of wrongdoing even when they possessed proof of her innocence, contributing to the demise of Plaintiff's business.

6. After racially harassing Plaintiff's business with baseless administrative investigations, Defendants Campbell, Brewer, Elery, Shrout, and Meredith indiscriminately referred alleged violations to the KBC for approval. KBC members Casa, Teall, Hobbs, McDaniel, and Meredith failed in their duty to impartially review these allegations, instead endorsing unfounded charges that harmed Plaintiff's business and reputation.

7. Plaintiff, an African American woman, argues that KBC's actions violated her rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting her business to disproportionate scrutiny and baseless citations compared to white-owned businesses. She also claims a violation of Due Process, as well as multiple common law claims of malicious prosecution, tortious interference, and civil conspiracy.

## II. JURISDICTION AND VENUE

8. The Plaintiff seeks damages from the Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983 for launching disproportionately frequent, intensive, and public inspections into her business that resulted in multiple violations of the privileges, and immunities guaranteed her by the Fourteenth Amendments to the Constitution of the United States.

9.     Accordingly, this Court has jurisdiction over this case pursuant to the provisions of 28 U.S.C. § 1331 and § 1343.

10.     This Court has supplemental jurisdiction over any of the Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

11.     Calloway County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

### III. PARTIES

12.     Plaintiff, Courtney Hamilton ("Courtney"), was at all times herein mentioned a resident of Calloway County Kentucky.

13.     Defendant Campbell was at all times was at all times herein mentioned a resident of Boyle County Kentucky.

14.     Upon information and belief, Defendant Shrout was at all times was at all times herein mentioned a resident of Franklin County Kentucky.

15.     Upon information and belief, Defendant Elery was at all times was at all times herein mentioned a resident of Jefferson County Kentucky.

16.     Upon information and belief, Defendant Brewer was at all times was at all times herein mentioned a resident of Franklin County Kentucky.

17.     Upon information and belief, Defendant Meredith was at all times was at all times herein mentioned a resident of Mercer County Kentucky.

18.     Upon information and belief, Defendant Casa was at all times was at all times herein mentioned a resident of Fayette County Kentucky.

19.     Upon information and belief, Defendant Teall was at all times was at all times herein mentioned a resident of Fayette County Kentucky.

20.     Upon information and belief, Defendant McDaniel was at all times was at all times herein mentioned a resident of McCracken County Kentucky.

21.     Upon information and belief, Defendant Hobbs was at all times was at all times herein mentioned a resident of Fayette County Kentucky.

## V. FACTS

22.     The KBC had a target on Courtney's back from the beginning. She never had an equal shot.

23.     When Courtney was enrolled in cosmetology school in 2020, she studied under a KBC board member, Defendant McDaniel, at West Kentucky Community and Technical College ("WKCTC").

24.     Defendant McDaniel targeted and harassed Courtney in school and tried to deny her the hours that she had earned, and therefore prevent her from graduating and obtaining her license.

25.     The issue arose because prior to Courtney enrolling at WKCTC, she spoke with McDaniel about McDaniel retiring. During that conversation Courtney mentioned that she would be interested in taking McDaniel's place. McDaniel took offense to that suggestion, because, upon information and belief, she did not want a person of color in "her" position.

26.     Defendant McDaniel then retaliated against Courtney by cussing her out, and she then isolated Courtney and stopped teaching her. Defendant McDaniel then tried to deny Courtney the ability to graduate by not instructing or teaching her the necessary skills for success.

27.     Courtney overcame this obstacle with grit, and self-study, and ultimately had to go to the President of the school, and McDaniel's Dean, to stop the harassment, and force McDaniel to allow Courtney to complete her program.  Defendant McDaniel never forgot.

28.     After Courtney graduated from cosmetology school, she paid a $75 fee to take the in-person licensing exam.  She then drove four hours from Murray to Frankfort to take it.

29.     Because Defendant McDaniel had stopped teaching Courtney, she was ill prepared, and she failed the exam.

30.     Courtney went home and self-studied. She rescheduled her exam and drove back to Frankfort.

31.     This time Defendant Campbell blocked Courtney and would not let her take the exam at all because she was not wearing "the right kind of scrubs."

32.     At that time the KBC website said that test takers were required to wear all black or all grey scrubs, and it made no mention of the style.  The website made no mention as to whether the scrubs should be straight legged or tapered.

33.     Courtney's scrubs tapered to her ankle and Defendant Campbell arbitrarily said she needed to wear straight leg scrubs.

34.     Courtney explained that she was wearing scrubs, and showed them the website that made no mention of scrub style.  Nevertheless, Campbell persisted.

35.     Courtney then asked if she could go to the Walmart in Frankfort or Lexington to look for a pair of straight leg scrubs, and Defendant Campbell said no.

36.     Plaintiff lost another $75 sign-up fee and made another four-hour trip home empty handed.

37.     After the Plaintiff went home, she rescheduled her exam, drove back to Frankfort on another day, and she passed her exam.

38.     After overcoming racial discrimination barriers to graduate and obtain her license, the Plaintiff opened Meraki Beauty School in Murray, KY on March 18, 2022, following an opening inspection by the KBC.

39.     From that point forward Defendant Campbell abused her power by using the tools, and personnel of the KBC to relentlessly harass and sabotage the Plaintiff's business until it closed.

40.     After the Plaintiff opened her school in March of 2022, she built her clientele and had 30 students enrolled shortly thereafter.

41.     In order to enroll into her school, each student signed a contract with the school, and paid approximately $10,000 in tuition.

42.     On August 9, 2022 Meraki was investigated a second time by the KBC, this time by inspector Lorie Bennett.  Lorie also conducted an audit of Meraki's paperwork.

43.     While there was no valid reason to re-investigate the Plaintiff's school just 5 months after its opening, it wasn't necessarily improper either, as statutes mandate biannual inspections for schools.

44.     But the frequency with which the Plaintiff was inspected, and the manner, were totally abnormal, and serve as concrete proof of disparate treatment on the basis of her race.

45.     In addition to the March and August 2022 inspections, and the August, the Plaintiff was baselessly fined for regulatory non-compliance in August and September of 2022.

46.     Part of a cosmetology school's monthly responsibilities are entering each student's earned hours, and submitting those hours electronically to the KBC.

47.     Hours are to be uploaded manually on the ky.gov website, and they are due no later than the 10th day of each month. The system itself states that so long as hours are entered by 11:59 p.m. on the 9th day of each month they are timely entered. The system makes no mention of eastern or central time. However, when the Plaintiff entered her students' July hours before 11:59 central time (in Murray), they showed up in the Frankfort office as late, simply because Frankfort is in a different time zone. Defendant Brewer then fined Courtney for the "late" submission.

48.     When the Plaintiff communicated to Defendant Brewer that she made a timely submission, and that no one, including the system, had ever mentioned eastern time zone compliance, the fine remained.

49.     A similar occurrence happened in September of 2022. This time Courtney entered her hours well before the deadline. However, after the deadline had passed, Courtney logged back into the system to print the hours for her personal record. When she logged back into the system the second time (after the submission deadline) the system notated her presence. Thus, when Defendant Brewer logged into the system to approve the hours, she saw that Courtney had been in the system after the deadline, and then assumed that Courtney was late, and fined her again.

50.     Because Courtney was "burned" in August, she actually took screen shots of her timely entry of hours in September. And after she was fined in September for "late" entry (that were not late), she sent Defendant Brewer proof of timely entry by the screen shots. Brewer maintained the September fine. Upon information and belief, Brewer did so at Campbell's demand.

51.     After Campbell maintained the September citation, the Plaintiff made a timely request for an administrative appeal.

52.     Pursuant to KRS 317A.070 the KBC was required to provide Courtney a hearing on her appeal, so long as the request for a hearing is made within 30 days of the fine. Courtney made a timely request for a hearing, but her request was ignored.

53.     In October of 2022 Courtney requested to open a second school to meet growing demand.

54.     Defendant Campbell unilaterally stopped the Plaintiff from applying for a new school, which was outside of the scope of her authority.

55.     The following month, November 2022, Defendant Campbell ordered a third inspection and a second audit of Meraki Beauty School.

56.     On this occasion two inspectors came into the school, again, in the middle of the day with clients and or students present and working, and they conducted a very aggressive investigation and audit.

57.     On this occasion, Inspector Jason Back actually used Courtney's beauty school to interrogate a student for an issue that was unrelated to the school.

58.     The consistent arrival, presence, and behavior of the inspectors created fear and uncertainty among students who began to doubt that Meraki was a credible business.

59.     In December of 2022 Campbell ordered a fourth inspection and third audit of Meraki.

60.     This time Defendant Elery came in and found no wrongdoing, so she left.

61.     However, a short time later Elery returned with orders from Campbell to "launch an investigation."

62.     The KBC then put Meraki "under investigation" and that "investigation" never closed.

63.     Not only did Defendant Campbell order this baseless investigation, she took no steps to ensure confidentiality or professionalism to protect Courtney's business.

64.     Additionally, after inspecting and auditing Meraki that morning and finding no wrong doing, Elery cited an apprentice, Emily Hill, for instructing without a license, when she came back to the school the second time.

65.     Hill was in complete compliance with the law but paid the fine because she did not want to upset Defendant Campbell, or have any conflict with the KBC.

66.     By January of 2023, a KBC inspector had either inspected or audited Meraki 10 times.

67.     On January 31, 2023 the KBC received a "complaint" about Meraki from "Janie Huckaba," who, upon information and belief, is not a real person, and was certainly not a student of the school.

68.     Nonetheless, Defendant Campbell took no steps to ascertain the identity of Janie Huckaba, and instead ordered a fifth inspection, and a fourth audit of Meraki.

69.     Shortly thereafter Campbell herself, and two other KBC inspectors came into the beauty school with students and or clients present.

70.     Again, they found no evidence of any wrongdoing but continued to investigate and harass Courtney and her students.

71.     Campbell lives near Danville, Ky and her office is in Frankfort. For her to come to personally investigate the fake complaint against Meraki, which is completely abnormal, she had to drive approximately five hours, and she did so either without making any effort to determine whether or not Janie Huckaba was a real person, or she knew "Janie" was fake and made the drive anyway.

72.     By this time the students at Meraki lost all confidence in Meraki and Courtney herself. The KBC continued to launch baseless inspections and audits of the school and they had an open "investigation" into the school that remained public knowledge, yet unresolved. The KBC's consistent presence was completely abnormal and completely disrupted and discredited Meraki, and caused Courtney to miss work with stress related illness.

73.     Several students – out of fear of the KBC closing down Meraki – demanded assurances from Courtney that everything was going to be ok.

74.     Courtney was unable to provide that assurance because she never knew what the KBC was actually looking for, or why they kept showing up.

75.     Without those assurances, student fear spiraled out of control. Courtney started to have stress related health issues that caused her to miss work, and students, in a panic, started leaving Meraki to join competitors who were leveraging the student's fear as a recruiting fodder.

76.     July of 2023 was the date that Courtney's school license was set to expire. When she attempted to renew her school license, the KBC denied her. She reached out to

the KBC to figure out why she was unable to renew her license no one responded to her emails, and no one would answer the phone.

77.     The day before the deadline to renew Courtney drove from Murray to Frankfort to make contact.   When she got to Frankfort she made contact with an inspector in the parking lot, who informed her that staff was inside working, but they would not see her or allow her inside.

78.     Because of this, her license was suspended, and she had to close her school.

79.     For the next several weeks and months Courtney sought an explanation and she finally received an email on August 8, 2023 stating that the reason that she was unable renew her license is because she had an outstanding legal issue.

80.     When Courtney asked what legal issue they were referring to she was told it was from her failure to pay the fine for entering her hours late in August and September of 2022.

81.     Courtney explained, again, that she had entered her hours on time, and that the issues were simply clerical issues on KBC's end.  She also explained that she submitted a timely request for an appeal, which was acknowledged, but not provided.  In other words, the KBC knew of her request for an appeal, and chose not to provide it to her. Therefore, it was the KBC's fault, not hers, that there were outstanding legal issues, yet they used that as a reason to deny her license and close her school.

82.     Several weeks later, Christopher Hunt, former general counsel and assistant director of the KBC wrote Courtney an email apologizing to her because they missed her request for an appeal as a "clerical error," but by this time irreparable damage had already

been done; the vast majority of her students left, her brand and reputation was demolished, and her school had been permanently closed.

83. The KBC inspected the school when it opened in March of 2022; they audited and inspected the school in August of 2022; they audited and inspected the school in November of 2022; they audited and inspected the school in December of 2022; they opened an "investigation" into the school in December 2022, the basis of which was never communicated, and was never resolved; they audited and inspected the school in March of 2023, and; they refused to renew her license and closed her school in July of 2023. These actions were completely baseless, they lacked probable cause, and were not supported by any compelling or legitimate state interest, they were racially motivated, and they had the effect of closing Courtney's school.

84. As a direct and proximate result of the intentional, malicious, and negligent behavior described herein, Courtney lost her business on September 14, 2023, and has suffered severe emotional, physical, and financial injury as well as severe harm to her reputation.

## VI. CAUSES OF ACTION

### COUNT ONE – MALICIOUS PROSECUTION
### KENTUCKY COMMON LAW VIOLATION
### SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C § 1367
### (Against Julie Campbell individually)

85. Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

86. Defendant Campbell, in her individual capacity, and acting with malice or reckless disregard, took steps to initiate and continue administrative investigations, audits,

inspections, and prosecution of the Plaintiff despite a lack of probable cause to institute or continue them. Campbell's conduct was intentional, malicious, and in bad faith.

87. Any probable cause claimed by Campbell by way of "investigating complaints against the school" is baseless because the "complaints" against the school occurred only after the school was sabotaged by Campbell and the KBC. By the time "complaints" against the school were received (several students complained of Courtney's absences and stress related behavior in April and May of 2023) irreparable harm had already been done.

88. The KBC's "investigations" into the school never produced any material allegations of wrongdoing, and the minor allegations of missing the deadline to insert hours were ultimately resolved in the Plaintiff's favor.

89. Campbell is not entitled to qualified immunity because, a reasonable director of the KBC in her position would have known in 2022 and 2023 launching 12 separate public inspections, investigations and or audits into a business in a 12 month period without probable cause, leaving them open and pending for months at a time without resolution, making no effort whatsoever to keep the inspections, investigations, or audits confidential or private, denying a license holder a timely appeal, investigating complaints made by individuals who do not exist, using the Plaintiff's facility as a location for an interrogation of a complaint that was not related to the Plaintiff's business while there were students and or clients on the premises, and without the Plaintiff's permission, and making no affirmative statement to the staff or students of the school that the investigations, audits, and or inspections found no evidence of wrongdoing would violate clearly established statutory or Constitutional rights.

90.     As a direct result of Campbell's action, Plaintiff suffered compensatory damages.

### COUNT TWO – DISPARATE TREATMENT/RACIAL DISCRIMINATION UNDER COLOR OF LAW IN VIOLATION OF THE EQUAL PROTECTION CLAUSE 42 U.S.C. § 1983 VIOLATION (Against all Defendants individually)

91.     Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

92.     By launching 10 + independent audits, inspections, and or investigations in a 10 month period without probable cause, leaving investigations open and pending for months without resolution or communication, ignoring timely requests for appeal, and not allowing Courtney to take the test because she was wearing tapered scrubs, the defendants violated the Equal Protection clause of the 14th Amendment to the United States Constitution, as such actions were motivated by a discriminatory purpose of racial discrimination and had a discriminatory effect of discrimination on the basis of race.

93.     Caucasian salon and or school owners do not experience this type of treatment. They are listened to when they have problems, they are rarely inspected and or audited, and they are given the benefit of the doubt when there are suspicions of potential wrongdoing, or technical errors without harmful intent.

94.     In this case, the Defendants, with Campbell leading the charge, singled out a minority-owned businesses for frequent, intense, and baseless investigation while not investigating similarly situated non-minority-owned businesses in similar situations.

95. As a direct result of the Defendant's action, Courtney suffered compensatory damages.

## COUNT THREE – VIOLATION OF DUE PROCESS
## UNDER COLOR OF LAW IN VIOLATION OF
## 42 U.S.C. § 1983 VIOLATION
### (Against all Defendants individually)

96. Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

97. The Due Process Clause of the 14th Amendment to the United States Constitution states in relevant part "nor shall any state deprive any person of life, liberty, or property, without due process of law."

98. In this case the Defendants identified in this cause of action deprived Courtney of her life, liberty, and property without due process because they cited her in the summer of 2022 for two administrative violations, she filed a timely request for an appeal, the Defendants ignored or failed to provide her with a timely appeal, and they then used the unresolved violations as a basis to close her school in July of 2023, from which Meraki was not able to recover.

99. As a direct result of the Defendant's action and inaction, Plaintiff suffered compensatory damages.

## COUNT FOUR – NEGLIGENT TRAINING AND SUPERVISION
## KENTUCKY COMMON LAW VIOLATION
## SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C § 1367
### (Against Defendant Julie Campbell)

100.    Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

101.    Campbell completely failed to adopt or promulgate adequate policies and procedures for inspecting salons and or schools, identifying violations of administrative regulations, communicating them, reviewing them, and deciding appropriate discipline and or corrective action.

102.    Campbell was also grossly negligent in the training and supervision of the KBC's inspectors, auditors, intake personnel, and board members on this process, which resulted in Courtney being deprived of her right to life, liberty, and property without due process, racial discrimination, negligence and gross negligence, and abuse of power.

103.    Campbell knew or reasonably should have known that failure to implement adequate policies and procedures, and failure to appropriately train and or supervise her staff and board members would foreseeably result in injury and due process violations. Yet Campbell not only employed an untrained, and ill-equipped team, she actually ordered them to engage in aggressive, baseless, abusive, and racially discriminatory investigations, inspections, and audits.

104.    As a result of Campbell's action and inaction, Courtney has suffered compensatory damages.

## COUNT FIVE – NEGLIGENCE/GROSS NEGLIGENCE
## KENTUCKY COMMON LAW VIOLATION
## SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C § 1367
### (Against all Defendants individually)

105.     Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

106.     Each Defendant named in this cause of action owed a reasonable duty of care to Courtney to neither baselessly interfere with her business, subject her to unlawful, unconstitutional, or excessive conduct, nor wrongfully harass, intimidate, or initiate administrative inspections, audits, or investigations without probable cause.

107.     To the extent that probable cause is claimed and or found, the Defendants named in this cause of action owed a reasonable duty of care to Courtney to promptly investigate, and promptly close the investigation, and promptly communicate the findings of the investigation, and promptly take and or recommend informed and decisive corrective action.

108.     While Defendant Campbell ordered the inspections and or investigations and audits, the other named Defendants share fault for negligence and or gross negligence because each owed a duty of care to Courtney, and each breached their respective duties.

109.     For example, Defendant Brewer owed Courtney a duty of reasonable care to not cite her for late hour submission if and when she possessed proof of timely entry. Yet Brewer breached her duty of reasonable care by persisting with fines and citations despite proof of innocence.

110.     Elery also had a duty of reasonable care to conduct investigations and inspections in a fair and impartial manner. And she did so until December of 2022 when

she came back into Courtney's school – after she had left that morning having not found any evidence of wrongdoing – and cited Emily Hill for instructing without a license, when she was in fact not instructing without a license.

111.    Upon information and belief, Defendants Shrout and Meredith serve as complaint intake.  Together, they owe a duty to all license holders, including Courtney, to verify complaints, or check their accuracy before referring them to the KBC as a whole.  Yet these two Defendants breached this duty by sending to the KBC false and or unvetted complaints against Courtney (late hour entry) that they knew or reasonably should have known to be untrue.

112.    The KBC member Defendants also had a duty to verify claims before voting to punish a license holder for them.  Yet they all breached this duty by simply rubber-stamping whatever complaint they received from Shrout, Meredith, or an inspector.

113.    Finally, each named Defendant had a duty to allow Courtney to appeal administrative violations against her.  Yet when Courtney submitted her hour entry appeal in the fall of 2022, she was not granted an appeal – even though the KBC received it in a timely manner.  This is a breach of the standard of care that was, upon information and belief, intentional or done with reckless disregard of the impact on Courtney's business.

114.    The Defendants named in this cause of action breached these duties and those breaches were the direct and proximate cause of Courtney's compensatory damages.

## COUNT SIX – TORTIOUS INTERFERENCE WITH
## CONTRACTS
## KENTUCKY COMMON LAW VIOLATION
## SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C § 1367
## (Against all Defendants individually)

115.    Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

116.    In this case Courtney had dozens of existing contracts with students enrolled in her cosmetology school, of which the Defendants were or reasonably should have been aware.

117.    These contracts were broken, and were intended to be broken without privilege or justification, because the Defendants named in this cause of action actually intended to close the Plaintiff's school completely with no compelling or even legitimate state interest.

118.    As a result, Courtney has suffered compensatory and special damages.

## COUNT SEVEN – TORTIOUS INTERFERENCE WITH
## LEGITIMATE BUSINESS EXPECTATIONS
## KENTUCKY COMMON LAW VIOLATION
## SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C § 1367
## (Against all Defendants individually)

119.    Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

120.    In this case Courtney had not only existing contracts, but valid business relationships and expectancies not memorialized by way of an enforceable contract.

121.    For example, she had a large clientele base, and a brand, that was worth hundreds of thousands of dollars.  The Defendants identified in this cause of action knew or reasonably should have known about these business expectations, and they intentionally interfered with them for improper motive.

122.    As a result, Courtney has suffered compensatory and special damages.

## COUNT EIGHT – CIVIL CONSPIRACY
## KENTUCKY COMMON LAW VIOLATION
## SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C § 1367
### (Against Defendants Julie Campbell, Tanya Shrout, Margaret Meredith, and Tracy McDaniel individually)

123.    Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

124.    In this case the Defendants named in this cause of action unlawfully and corruptly conspired with one another to tortiously interfere with Courtney's business, maliciously prosecute her, deny her due process, and racially discriminate against her.

125.    As a result, Courtney has suffered compensatory damages.


**WHEREFORE**, the Plaintiff Courtney Hamilton respectfully requests the following:

A.      That this Court grant the Petitioner the ability to conduct appropriate and necessary discovery in order to prove the allegations set forth in this Verified Complaint with respect to the alleged unconstitutional and or tortious misconduct by the named Defendants, or other unnamed Defendants;

B.      For a trial by jury;

C.      A declaration by Court Order that the Defendants violated the Equal Protection clause in the 14th Amendment to the United States Constitution;

D.      A declaration by Court Order that the Defendants violated the Due Process clause in the 14th Amendment to the United States Constitution;

E.      That the Court award compensatory damages to the Plaintiff and against the Defendants in an amount to be determined at trial;

F.      That the Court award punitive damages against the Defendants in an amount to be determined at trial, and which will deter such conduct by Defendants in the future;

G.      For pre-judgment and post judgment interest and recovery of their costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988 for all us U.S.C. § 1983 claims and costs pursuant to 42 U.S.C. § 1920; and

H.      For any and all other relief to which she may be entitled.

Respectfully submitted,

    /s/ David S. Borum
David Borum, Attorney at Law PLLC
*Attorney for Plaintiff*
*KENTUCKY BAR #99498*
517 West Ormsby Avenue
Louisville, KY 40203
dsborum@gmail.com
Cell: (270) 617.1957
Fax: (502) 470.3194

## VERIFICATION OF COMPLAINT

I, Courtney Hamilton, am the Plaintiff and after being duly sworn under oath hereby swear and affirm that the allegations made in this complaint are true and accurate to the best of my knowledge and belief, so help me God.

Name: *Courtney Hamilton*

Signature: *Courtney Hamilton*

Courtney Hamilton

Subscribed and sworn to before me by Courtney Hamilton on this 23 day of July, 2024, to be his or her free act and voluntary deed.

My commission expires: August 25, 2027

*Raegan Moore*

NOTARY PUBLIC

Raegan Moore
Notary Public, ID KYNP78313
State at Large, Kentucky
My Commission Expires on 8-25-27