UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**COURTNEY HAMILTON**                                                                    PLAINTIFF

v.                                                                          No. 5:24-cv-128-BJB

**JULIE CAMPBELL, ET AL.**                                                              DEFENDANTS

\* \* \* \* \*

## OPINION & ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO AMEND

Courtney Hamilton opened a cosmetology training school in Murray shortly after graduating from a nearby training program at Western Kentucky Community and Technical College. Less than two years later, Hamilton's school shut down after the Kentucky Board of Cosmetology denied her application to renew its license. In response, Hamilton sued several Board employees and members whose actions, in her view, led to the business's closure in September 2023. Her initial, verified complaint asserts eight different constitutional, negligence, and discrimination claims under federal and state law. DN 1. But she didn't file it until 16 months after the last of the alleged inspections, comments, and fines, which ended (on her own telling) around January 2023.

The Defendants moved to dismiss the original complaint (DN 8), arguing that it was filed too late and wouldn't allow Hamilton to recover in any event. After that motion was fully briefed, Hamilton moved for leave to amend the complaint (DN 14) to add new factual allegations and five additional counts reaching back to her time as a student at WKCTC. The proposed amended complaint left the original eight counts substantively unchanged, aside from re-numbering them as Counts 6 through 13. The Defendants oppose the motion to amend (DN 17), contending that the five new counts are futile.[1]

---

[1] Courts "should freely give leave" to amend a complaint "when justice so requires." FED. R. CIV. P. 15(a). Grounds to deny leave include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party … [or] futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the Defendants oppose amendment solely on futility grounds, *see* Response to Motion to Amend at 1, and the proposed amendment otherwise appears appropriate. So the Court considers the additional allegations when evaluating both motions.

The Defendants are correct, so the Court grants their motion to dismiss and denies Hamilton's motion to amend. Each of Hamilton's claims in the original complaint—even accepting all her factual allegations as true—fails to state a claim that would entitle her to relief. And the proposed amendments would not cure those deficiencies. Nor do any of the new counts in the proposed amended complaint state a viable claim; each is time-barred, legally defective, or unsupported by plausible factual allegations. The dismissal is without prejudice. Hamilton may move for leave to amend within 21 days of this Order if she can do so consistent with Rule 11.

## Hamilton's Allegations

The story, which the Court accepts as true at this stage, begins with Hamilton's 2019 visit to WKCTC, where she inquired about enrolling in its cosmetology-instruction program. Amended Complaint (DN 14-1) ¶ 32–33. She had already worked as a licensed cosmetologist for 16 years and was considering enrolling as part of her plan to open her own training school. ¶ 32. During that visit, she learned that Defendant Tracy McDaniel, the training program coordinator, planned to retire soon. ¶ 34. Hamilton expressed interest in eventually applying for the position. *Id.* Not long after she enrolled, she had submitted her résumé, unaware that McDaniel had already identified someone else to succeed her. ¶¶ 35–39.

That's when Hamilton's difficulties began. As set forth in the Amended Complaint, McDaniel imposed vague and unspoken expectations, withheld key instruction, and treated her with hostility. ¶¶ 39–44. Concerned that this might jeopardize her graduation, Hamilton—who is African American—reported to the dean that she believed McDaniel's conduct might stem from racial bias. ¶¶ 45–46. She based this concern partly on McDaniel's selection of a white successor and partly on what other students told her—namely, that McDaniel had previously mistreated another African American instructor. ¶¶ 36–37, 41–42. After Hamilton's report, which she believes was relayed to McDaniel, the two allegedly ceased communicating—except when McDaniel cursed at Hamilton in response to a question. ¶¶ 47–49.

Despite these tensions, Hamilton graduated. ¶ 50. But her difficulties continued beyond WKCTC. McDaniel and Defendant Julie Campbell, then executive director of the Board, conspired to retaliate against Hamilton and drive her business into the ground. ¶ 52. That retaliation, she says, took the form of repeated inspections, audits, and investigations initiated at Campbell's direction, along with a series of fines that Hamilton contends were baseless. ¶ 145. The Board, for its part, refused to reconsider them despite her appeal. ¶ 113.

Between March 2022, when Hamilton opened Meraki Beauty School, and January 2023, she alleges the Board inspected or audited her school at least ten times—far exceeding the two annual inspections required by regulation or the normal amount of supervision for an allegedly under-staffed agency. ¶¶ 8, 71–72, 97. One inspector interrogated a student about an unrelated incident, and another—

2

Defendant Shawante Elery—cited a student for teaching without a license, even though Hamilton asserts the citation was unwarranted. ¶¶ 86–87, 94–95. The Board also opened an investigation after receiving a complaint from someone named Janie Huckaba, whom Hamilton alleges, "upon information and belief," "is not a real person." ¶ 98. Defendants Tanya Shrout and Margaret Meredith, who handled complaints, forwarded the allegation to the Board without verifying its validity. ¶ 174. Campbell herself then drove nearly five hours from Danville to investigate without contacting Hamilton or first determining whether the complaint had merit. ¶ 102. Hamilton alleges that the cumulative effect of these visits caused her stress-related health issues and prompted some students to withdraw out of fear the school might close. ¶¶ 103–106.

Separately, the Board fined Hamilton in August and September 2022 for failing to electronically submit her students' hours by the monthly deadline. ¶ 73. But Hamilton contends she submitted her August hours before the deadline under Central Time—her school's time zone in Murray—and the reporting system didn't specify a required time zone. ¶ 75. The next month, she says, the system showed a late login even though she had already submitted the report on time. ¶ 78. Defendant Lea Ann Brewer, the Board's school-hour coordinator, refused to rescind either fine even after Hamilton sent a screenshot of her timely September submission. ¶¶ 1, 76, 79. Hamilton filed a formal appeal of the September fine but received no response. ¶¶ 81.

The final blow came in July 2023, when the Board denied her school's license-renewal application. ¶ 107. In August, the Board informed her by email that the denial was based on her failure to pay the outstanding fines. ¶ 112. Several weeks later, the Board's former general counsel and assistant director, Christopher Hunt, emailed Hamilton to apologize for never responding to her appeal. ¶ 114. He attributed the omission to a clerical error and notified her that the Board had decided to rescind the fine. Hunt Email (DN 11-2). Hamilton never appealed the license-renewal denial itself. Her school closed on September 14, 2023. ¶ 116.

## DISCUSSION

This opinion addresses the original motion to dismiss first, then turns to Hamilton's motion to amend and the Defendants' opposition based on futility.

**A. Defendants' Motion to Dismiss**

1. <u>Count 1: Malicious prosecution</u>

Hamilton alleges that Campbell (and no other Defendant) engaged in malicious prosecution by subjecting her business to repeated inspections, audits, and investigations. In her response brief, she also argues for the first time that the fines

3

imposed for late student-hour filings show she was subjected to disciplinary action. MTD Response (DN 11) at 11.[2]

To state a claim for malicious prosecution under Kentucky law, a plaintiff must plead facts establishing five elements: (1) the defendant "initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff"; (2) the defendant lacked probable cause; (3) the defendant acted with malice—that is, for "a purpose other than the proper adjudication" of the underlying charge; (4) the proceeding terminated in the plaintiff's favor; and (5) the plaintiff suffered resulting damages. *Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016), as corrected (Sept. 22, 2016). Kentucky courts require strict compliance with each element. *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013).[3]

---

[2] A plaintiff may not amend a complaint through a brief in opposition to a motion to dismiss. *See, e.g.*, *Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). The Court addresses Hamilton's fines argument here only to eliminate any doubt.

[3] In *Martin*, Kentucky's Supreme Court carefully revised the elements of malicious prosecution. Under *Garcia*, and an earlier case called *Raine*, the tort required "(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings; (2) by, or at the instance, of the plaintiff [i.e., the malicious-prosecution defendant]; (3) the termination of such proceedings in defendant's [meaning *plaintiff's* in the malicious prosecution action] favor; (4) malice in the institution of such proceeding; (5) want or lack of probable cause for the proceeding; and (6) the suffering of damage as a result of the proceeding." *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981); *see also Garcia*, 400 S.W.3d at 274 (following *Raine*).

*Martin* changed things. Among other changes, that case abandoned *Raine*'s "at the instance" language "[g]iven [its] lack of clarity." 507 S.W.3d at 10. And it explained that "malice" "means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based." *Id.* at 11–12.

But *Martin* made another change too. As formulated in *Raine*, malicious prosecution reached "administrative *or* disciplinary proceedings." 621 S.W.2d at 899 (emphasis added). *Martin* dropped the "or"—referring instead to malicious prosecution based on "administrative disciplinary proceeding[s]." 507 S.W.3d at 11. Unlike the other changes *Martin* described, however, this one was not explained—despite the seemingly consequential difference between an "administrative disciplinary proceeding" and an "administrative *or* disciplinary proceeding." The universe of proceedings that are *both* administrative and disciplinary is surely smaller than the set of proceedings that are *either* administrative or disciplinary.

Whatever the reason or effect of this change, however, it does not affect Hamilton's case. Hamilton fails to describe any investigation or inspection that is an administrative proceeding, disciplinary proceeding, or both under state law.

The parties dispute whether the "audits, inspections, and or investigations," Amended Complaint ¶ 155; *see also* ¶¶ 8, 11, 13, 17, 103, 145, 149 (seemingly using these terms interchangeably), qualify as an "administrative disciplinary proceeding." Mere inspections, audits, interrogations, and similar oversight measures, according to the Defendants, are preliminary investigative steps, not administrative disciplinary proceedings subject to malicious-prosecution liability. MTD at 10. They similarly dispute the proper categorization of the fines Hamilton belatedly challenges. That theory, the Defendants maintain, fails because Campbell neither imposed the fines nor initiated any appeal. MTD Reply (DN 13) at 5.

**a.** Hamilton's malicious-prosecution claim rests primarily on the Board's repeated inspections and investigations. But those activities are exactly the sort of "preliminary steps" the Defendants describe: oversight measures that may or may not lead to an administrative proceeding—and therefore fall beyond the reach of malicious-prosecution liability.

Kentucky's regulatory scheme authorizes non-adjudicatory compliance checks, which allow the Board to inspect licensed establishments "during reasonable working hours or at any time when the establishment is open to the public" to ensure compliance with state laws and regulations. 201 Ky. Admin. Reg. 12:060, § 2(1). Each business is subject to "a minimum of two" such inspections per year, with no maximum number appearing in the regulations. § 2(3). The inspections themselves don't trigger or constitute any formal proceeding—though they could unearth evidence of violations that *would* trigger a disciplinary process under this scheme. *See* 201 Ky. Admin. Regs. 12:190 § 3 (describing formal initiation of disciplinary proceedings following an investigation and issuance of notice). True, the Board's repeated inspections of Hamilton's school far exceeded the number required. But that doesn't transform these preliminary steps into an actual disciplinary proceeding or sanction. And Hamilton doesn't cite anything suggesting the contrary.

Investigations represent a different form of regulatory activity, triggered by complaints. The Board may appoint a "complaint committee" to review complaints, initiate investigations, and recommend further action. 201 Ky. Admin. Reg. 12:190 § 2.[4] Hamilton alleges that her school was on the receiving end of 10 such investigations. As with inspections, however, an investigation doesn't amount to a disciplinary proceeding; it precedes one. Investigations begin after the Board issues a formal notice of disciplinary action—identifying the alleged violation, stating the

---

[4] The complaint committee may also "participate in informal proceedings to resolve complaints." 201 Ky. Admin. Reg. 12:190 § 2. Those proceedings include actions such as mediation and settlement negotiations. § 4. Nothing in the record suggests that the Board or its agents pursued—or that Hamilton participated in—any such resolution process.

5

proposed penalty, and informing the licensee of the right to a hearing. § 3(3)(d). If contested, the matter proceeds under KRS Chapter 13B, which governs formal administrative adjudications. Yet Hamilton alleges only that inspections and investigations occurred; she never asserts that they ever advanced to formal disciplinary proceedings.

The lack of a final or formal adjudication doesn't doom the argument, according to Hamilton, because the volume and burden of the inspections and investigations, considered cumulatively, had a punitive effect. But whether government activity amounts to a "proceeding" does not turn on whether that activity caused harm. Kentucky law requires "stric[t] compl[iance] with each element" of a malicious-prosecution claim, *Garcia*, 400 S.W.3d at 274, and Hamilton points to no caselaw treating mere oversight measures as disciplinary proceedings based on their frequency or disruption. The inspections and investigations may precede a proceeding, but they are not proceedings themselves, for they do not adjudicate charges or impose sanctions.

And even if the inspections and investigations that Hamilton describes amounted to a "proceeding," the claim would be time-barred. Kentucky law requires actions for malicious prosecution to commence "within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1)(c). The last inspection Hamilton identifies as part of her claim occurred in or around March 2023—sixteen months before she filed suit. Complaint ¶¶ 67–68; Amended Complaint ¶ 115.[5] By that time, she alleges she had already suffered damages, including stress-related health effects and the loss of students. Amended Complaint ¶¶ 103–106. Her cause of action therefore accrued no later than March 2023, and the one-year limitations period had run before she filed her complaint.

**b.** Hamilton also argues—belatedly, in her response brief—that the inspections and investigations ultimately *led to* disciplinary action in the form of fines imposed for late student-hour filings. *See* MTD Response (DN 11) at 11. But the fines didn't arise from anything discovered during the inspections or investigation; they resulted from missed reporting deadlines. (Hamilton disputes their lateness, but that's beside the point.) Her allegations describe two factually and procedurally

---

[5] The original complaint described inspections between March 2022 and January 2023, but the amended complaint refers to an inspection and audit in March 2023. To the extent these inspections constitute a single "investigation," the only corresponding action was Campbell's trip to the school "[s]hortly [a]fter" the January 31, 2023 complaint. Amended Complaint ¶ 100. And to the extent Hamilton alleges that this single investigation began in March 2023 and was "never resolved," *id.*, then a claim based on that (arguable) proceeding would appear to be unripe—because it never concluded in any manner that (even arguably) led to any adverse consequence for Hamilton. The pleadings never advance the bold position that the mere initiation of an investigation amounts to an "administrative disciplinary proceeding."

6

distinct episodes: (1) a series of inspections that "never produced any material allegations of wrongdoing," Complaint ¶ 88; and (2) fines imposed for late filings. The two episodes are neither causally nor procedurally connected. At most, then, Hamilton asserts two separate theories of malicious prosecution: one based on inspections and another based on fines. Because the fines bear no relation to the inspections or investigations, the inspections-based theory fails for the reasons explained above.

This fines theory fails on its own terms for three independent reasons. First, Hamilton does not plausibly allege that Campbell—the only Defendant named in this count—"initiated, continued, or procured" either fine or the administrative appeal of the September 2022 fine. The Defendants correctly point out that Brewer imposed the fines. *See* MTD Reply at 5. Campbell's alleged role in "demand[ing]" that someone else uphold one fine, Complaint ¶ 50, does not amount to initiation or procurement of that fine. And Hamilton hasn't pressed any argument that Campbell improperly continued the proceedings in so doing.[6]

Second, Hamilton identifies no "administrative disciplinary proceeding" connected to the fines. The governing statute authorizes the Board to impose fines for "[f]ailure to comply with the administrative regulations of the board." Ky. Rev. Stat. § 317A.140(1)(h). And the regulations require cosmetology schools to submit hours reports by the tenth day of each month. 201 Ky. Admin. Reg. 12:082 § 19(2). But not every matter that results in a fine constitutes a "proceeding" for malicious-prosecution purposes. *See, e.g., Snyder v. Collura*, No. 9-cv-12055, 2015 WL 758546 (D. Mass. Feb. 20, 2015), *aff'd*, 812 F.3d 46 (1st Cir. 2016) (state malicious-prosecution claim failed because issuance of a civil citation did not "commence" a proceeding). And Hamilton does not allege that the fines were imposed through any proceeding comparable to an adjudication.

Third, Hamilton's own allegations concede probable cause: she admits the reports arrived late, but ascribes that to time-zone confusion and a computer glitch. Complaint ¶¶ 47, 49. Even if those explanations might conceivably have warranted vacating the fines on appeal, Hamilton's *ex post facto* explanations don't negate the Board's probable cause for imposing the fines in the first place. And a malicious-prosecution claim cannot proceed when the plaintiff's own allegations establish probable cause. *See Artuso v. Felt*, No. 23-3035, 2024 WL 495763, at *7 (6th Cir. Feb. 8, 2024) ("[A] malicious prosecution claim cannot lie where probable cause is found.").[7]

---

[6] *Cf.* Restatement (Second) of Torts § 674 cmt. c ("[O]ne who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding.").

[7] The fines theory, unlike the inspections theory, would not be time-barred. A malicious-prosecution claim does not accrue until the underlying proceeding terminates in the plaintiff's favor. *Martin*, 507 S.W. 3d at 12. That can include a favorable adjudication or the

7

* * *

Because neither the inspections-based theory nor the fines-based theory alleges the initiation of an "administrative disciplinary proceeding"—or otherwise satisfies the elements of malicious prosecution—the Court dismisses Count 1.

2. Count 2: Violation of the Equal Protection Clause

All Defendants—both KBC employees and Board members—allegedly violated the Equal Protection Clause of the Fourteenth Amendment when they "singled out" Hamilton "for frequent, intense, and baseless investigation while not investigating similarly situated non-minority-owned businesses in similar situations." Complaint ¶ 94 (citing 42 U.S.C. § 1983). The Defendants move to dismiss the claim, arguing that Hamilton has failed to state a claim against any Defendant—and that even if she had, the statute of limitations has lapsed.

"The statute of limitations for § 1983 claims is the relevant state's statute of limitations for personal-injury torts." *Beaver Street Investments, LLC v. Summit County, Ohio*, 65 F.4th 822, 826 (6th Cir. 2023). Kentucky law requires such lawsuits to commence "within one (1) year after the cause of action accrued." Ky. Rev. Stat. 413.140(1)(a).

The allegedly discriminatory inspections and fines, on Hamilton's own telling, took place between March 2022 and March 2023. *See* Complaint ¶ 72; Amended Complaint ¶ 115. Yet Hamilton didn't file her complaint until 16 months later, on July 24, 2024. So a claim resting on those violations alone would be time-barred.

Hamilton counters that the limitations period began later because she "didn't develop the suspicion that something was amiss until August of 2023" and "could not have known the KBC's [racially motivated] intent prior to June 24, 2023." MTD Response at 5. But a § 1983 claim accrues upon "discovery of the injury, not discovery of the other elements of a claim." *Reguli v. Russ*, 109 F.4th 874, 883 (6th Cir. 2024) (cleaned up). That means the clock "can start to run even if a § 1983 plaintiff lacks knowledge of *every element* of the claim." *Id.* Hamilton was plainly aware of the injury to her business well before July 2023: she alleges that her students expressed fear, asked for reassurance, and even withdrew from the school in response to the inspections. *See* Complaint ¶¶ 72–75. She also complains of "stress related health issues" during that same period. ¶ 75. Because she knew of the alleged injury more than a year before filing suit, the claim cannot be saved by her later discovery of possible discriminatory intent. *See Reguli*, 109 F.4th at 883.

---

withdrawal or dismissal of the proceeding. *Feinberg v. Townsend*, 107 S.W.3d 910, 912 (Ky. Ct. App. 2003). Hamilton alleges that in August 2023, Christopher Hunt notified her that the Board had rescinded the September fine. *See* Hunt Email at 18. That notice could qualify as a favorable termination, meaning the limitations period began at that point. Because Hamilton filed suit within twelve months, the fines theory would not fail as untimely.

8

During a hearing with the Court, Hamilton raised the continuing-violation doctrine. Relevant here, that doctrine allows plaintiffs to challenge an "ongoing, continuous series of discriminatory acts … in their entirety as long as one of those discriminatory acts falls within the limitations period." *Kovacevich v. Kent State University*, 224 F.3d 806, 829 (6th Cir. 2000). But it appears "most commonly in Title VII cases" and is "rarely [applied] to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). And even if the doctrine applies here, the only act that arguably falls within the limitations period is the Board's denial of Hamilton's school-license-renewal application in July 2023, which ultimately led to the school closure in September 2023. *See* Complaint ¶ 84. The notion that license denial was part of a continuing string of discriminatory actions appears exceedingly unlikely, given the failure of the pleadings to connect it to other actions by any particular Defendant.

Regardless, Hamilton's claim would still fail because it doesn't allege that any named Defendant was personally responsible for the denial. The complaint attributes that action to the Board itself (which is not a Defendant) without identifying any particular member—let alone alleging any Defendant's role in the denial. Amended Complaint ¶ 107. Yet the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011). Without allegations of individual involvement in the license-renewal denial—or any other discriminatory act within the limitations period—the continuing-violation doctrine cannot save the claim.[8]

Because the complaint fails to allege that any Defendant engaged in a discriminatory act within the limitations period—or that any named individual was personally involved in the license-renewal denial—the Court grants the motion to dismiss the Equal Protection claim.

3. <u>Count 3: Violation of the Due Process Clause</u>

Hamilton next alleges that the Defendants violated her procedural-due-process rights by failing to provide a timely appeal of the fines the Board imposed, then using those unpaid fines to justify denying her license renewal. Due process, in its essence, requires that the government provide "notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. National Mortgage Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380

---

[8] The timing of the license-renewal denial may present an additional problem: neither the complaint nor the parties' filings identify when in July 2023 the denial occurred. Complaint ¶¶ 76, 83. Hamilton filed her complaint on July 24, 2024, so if the denial occurred more than a year earlier, it too would fall outside the limitations period. Pressed during the hearing for a specific date of denial, Hamilton's counsel again provided only the month of July 2023.

9

U.S. 545, 552 (1965)). The Due Process Clause is not rigid, particularly as applied to proceedings outside courts of law, which often involve public rather than private rights, but instead "calls for such procedural protections as the particular situation demands." *Id.*

According to the complaint, the Board fined Hamilton twice for allegedly failing to report student hours on time and then—due to a clerical error—failing to provide her with an appeal. Complaint ¶¶ 48–50, 82. Under Kentucky law, she had a right to request a hearing to challenge the fines. That right extends to any licensee against whom the Board seeks to impose a fine. Ky. Rev. Stat. § 317A.070. Any such hearing must "be conducted in accordance with KRS Chapter 13B," *id.*, which in turn directs the agency to hold the hearing "as soon as practicable," § 13B.050(1).

The problem for Hamilton is that the complaint doesn't tie the ignored appeal to any specific person. A § 1983 plaintiff must allege that a particular defendant, acting under color of state law, violated her rights. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). Her procedural-due-process claim runs against all Defendants, but the complaint connects only three individuals—Hunt, Brewer, and Campbell—to the fines or the appeal. Hunt apologized to Hamilton for a clerical error that allegedly caused the missed appeal, ¶ 82, but he isn't a named Defendant. And even if he were, the complaint doesn't allege facts showing that Hunt personally caused the violation. Brewer imposed the fines and later upheld one of them at Campbell's direction, despite Hamilton's objections. *See* ¶¶ 48–50. But those actions preceded the appeal process; they don't explain why Hamilton never received a hearing. Campbell's alleged involvement arose only when she allegedly directed Brewer to uphold the fine, despite Hamilton's objections and before the Board processed any appeal. ¶ 50. That directive plausibly suggests Campbell influenced whether Hamilton's appeal would go forward. But even so, the complaint still doesn't allege that Campbell (or anyone else) personally caused the "clerical error" or other procedural breakdown, however characterized—that is, the alleged failure to provide a hearing under Kentucky procedural rules. Instead, the complaint attributes the missed appeal merely to an unassigned clerical error, without identifying who made it or how Campbell's directive might've foreclosed the appeal process. And while Hamilton may well have had a colorable defense to the fines, § 1983 requires her to tie the deprivation of process to a specific defendant. Which she never does—not even implicitly—despite a generous reading of the allegations and briefing. The fine imposition was separate, even on her own telling, from the attempt to trigger a formal appeal process. Absent that link, the due-process claim fails.

Nor does the argument work to the extent Hamilton rests on the license-renewal denial as opposed to the fines. The complaint never indicates that she invoked the available process by appealing that denial, even though Kentucky law gave her the right to do so. *See* Ky. Rev. Stat. § 317A.070. Because she apparently

10

never requested a hearing about her denied renewal application, she cannot claim she was denied one. Due process requires the availability rather than utilization of process. And a plaintiff can't complain about a process that was available and (apparently) adequate but unused—as appears to be the case with respect to the license-renewal decision.[9]

Hamilton's response brief raises three additional theories: (1) a second procedural-due-process claim, (2) a substantive-due-process claim, and (3) a Fourth Amendment claim based on allegedly unlawful inspections. But none of these theories appear in the original or the amended complaint, so they're not properly before the Court. *See Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted).

In any event, the new theories would fail on the merits even if they had been pled. Hamilton argues that the Board denied her "notice and opportunity to be heard" regarding the inspections and investigations and that it should have obtained a warrant. Response at 9–11. These procedural-due-process and Fourth Amendment theories rest on the mistaken premise that state inspectors needed advance notice or a warrant to enter Hamilton's business. But Kentucky regulations allow inspectors to enter licensed establishments "during reasonable working hours or at any time when the establishment is open." 201 Ky. Admin. Reg. 12:060 § 2(1). Hamilton doesn't allege that any Defendant violated these requirements or explain why the regulations themselves violate the Due Process Clause—or the Fourth Amendment. The regulations impose no notice requirement, no right to be heard before or during an inspection, and no warrant requirement. Even if those claims had been properly pled, they would still fail.

As for the substantive-due-process theory, it appears to rely on a general principle of privacy in one's business. But business inspections conducted under clear state-law authority don't implicate a fundamental right or shock the conscience, even if they happen more often than state law requires. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (contemplating protection for rights treated as "fundamental"); *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (conscience-shocking behavior violates due process); *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012) (even "the petty harassment of a state agent" doesn't necessarily violate the Due Process Clause, regardless of whether the interventions were authorized) (quotation marks omitted).

---

[9] The record does not indicate whether Hamilton could still have sought judicial review of the license-renewal denial. That potential avenue of review further undermines any argument that the denial itself violated procedural due process

So that theory also fails to state a claim, and the Court dismisses Count 3.

4. Count 4: Negligent training or supervision

Hamilton alleges that Campbell negligently failed to implement adequate policies and procedures or to properly train and supervise staff and board members. These failures, she says, foreseeably led to the due-process violations discussed above. To prevail on a claim for negligent training or supervision, a plaintiff must show that "(1) the employer knew or had reason to know of the risk that the employee created; (2) the employee injured the plaintiff; and (3) the … supervision … of the employee proximately caused the injury." *Short v. Marvin Keller Trucking, Inc.*, 570 F. Supp. 3d 459, 467 n.4 (E.D. Ky. 2021) (citing *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005)).

But as explained in connection with Count 3, the only potential due-process violation here was the Board's failure to provide a timely hearing. And that failure allegedly flowed from a single clerical error. The complaint doesn't identify who made the error, allege that Campbell knew (or should've known) of any risk that such an error would occur, or explain how Campbell's supervision—or lack of it—caused the problem. Because the complaint fails to plausibly allege any of the three elements of a negligent-supervision claim, Count 4 must be dismissed.

5. Count 5: Negligence & gross negligence

Hamilton contends that the Defendants breached their duty of care through a series of negligent actions related to inspections, investigations, and disciplinary proceedings. Those negligent actions include (1) Campbell improperly ordering repeated inspections of her business; (2) Brewer fining her for late entries of time even after Hamilton explained that the entries were timely; (3) Elery conducting an unfair inspection that led to the inappropriate citation of a student; (4) Shrout and Meredith referring unverified complaints to the Board despite knowing or having reason to known the complaints were false; (5) the Board imposing discipline without verifying the complaints it received—whether from agency personnel or outside sources; and (6) all Defendants failing to grant a timely appeal of the fines.

As a threshold matter, Hamilton did not respond to the Defendants' arguments for dismissal of this count. That omission alone supports dismissal. *See KSA Enterprises, Inc. v. Branch Banking & Trust Co.*, 761 F. App'x 456, 463 (6th Cir. 2019) ("A party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of that argument.").

But even on the merits, the claim fails as pled.

Under Kentucky law, public officers are immune from liability for torts arising out of their discretionary acts. *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). This

state-law version of qualified official immunity bars negligence claims unless the official (1) negligently performed a ministerial duty or (2) acted with gross negligence. *See id.* at 522 (no qualified immunity for ministerial acts); *Bolton v. Blaine*, No. 2020-ca-396, 2021 WL 650271, at *4 (Ky. Ct. App. Feb. 19, 2021) (no qualified official immunity for gross-negligence claims).

Each action Hamilton identifies—ordering inspections, issuing fines, referring complaints, and imposing discipline—falls comfortably within the discretionary authority of public officials charged with regulating licensed cosmetology schools. Kentucky regulations expressly permitted Campbell to inspect a school whenever it was open. *See* 201 Ky. Admin. Reg. 12:060 § 2(1). That same regulation authorized Elery to conduct the inspection that led to the student citation. No alleged facts suggest that Elery acted outside her authority in conducting the inspection or citing the student—and in any event, Hamilton lacks standing to assert injuries suffered by third parties such as the student. *See Cameron v. EMW Women's Surgical Center, P.S.C.*, 664 S.W.3d 633, 648 (Ky. 2023) ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.") (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). Brewer had discretion to determine whether Hamilton's explanations for the late hour entries justified rescinding the fines. Shrout and Meredith exercised discretion in forwarding complaints to the Board, which in turn had discretion to evaluate those complaints and impose discipline. *See* 201 Ky. Admin. Reg. 12:060 § 2(1).

The only potential exception is Hamilton's allegation that the Defendants failed to grant her a timely appeal. That obligation, unlike the others, arguably involved a ministerial duty. *See Yanero*, 65 S.W.3d at 522. But the complaint neither ties that failure to any named Defendant nor pleads facts showing a breach of a clear ministerial obligation. Because it fails to state a claim for liability against any individual Defendant, this allegation cannot proceed.

Nor has Hamilton plausibly alleged gross negligence. That heightened standard requires both (1) a failure to exercise reasonable care and (2) wanton or reckless disregard for the rights or safety of others. *See Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 59 (Ky. 2013). In other words, malice, willfulness, or such serious indifference to consequences that malice may be inferred. *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001). Hamilton alleges that Campbell conspired with McDaniel "to target ... and harass her" and used "the tool[s] and personnel of the KBC to relentlessly harass and sabotage" her business. Amended Complaint ¶¶ 52, 67. But these allegations are speculative and conclusory; they offer no specific facts about Campbell's or McDaniel's motives and fall short of plausibly alleging the kind of "evil or unlawful motive or purpose" necessary to infer malice. *See Johnson v. Baker*, No. 1:08-cv-38, 2009 WL 3514576, at *3 (W.D. Ky. Oct. 29, 2009) (quoting *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40 (Ky. 1931)); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (The Court "need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action.") (quotation marks omitted).

13

As for the remaining Defendants, Hamilton alleges no facts suggesting they exhibited malice, willfulness, or reckless disregard for her rights. Because the negligence claims are barred by qualified official immunity and the gross negligence allegations fail to state a plausible claim for relief, the Court grants the motion to dismiss Count 5.

6. Counts 6–7: Tortious interference with contracts and business expectations

Hamilton next asserts that the Defendants intentionally interfered with her contractual and business relationships by trying to close her school. She alleges that she maintained "dozens of existing contracts with students" and other "valid business relationships and expectancies," which the Defendants caused to be broken "with no compelling or even legitimate state interest." Complaint ¶¶ 116–17, 120.

Once again, Hamilton did not respond to the Defendants' arguments for dismissal of these counts aside from their qualified-immunity arguments. Again, that alone warrants dismissal. *See KSA Enterprises*, 761 F. App'x at 463. And again, the claims fail on the merits regardless.

To state a claim for tortious interference with contract under Kentucky law, a plaintiff must allege that the defendant "intended to cause a breach" of a specific contract and lacked any "privilege or justification" for doing so. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. Ct. App. 2012). A related claim for interference with prospective business relations requires allegations that the defendant "intentionally interfered" in a manner motivated by an "improper" purpose. *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 715 (Ky. Ct. App. 2016).

Hamilton has not plausibly alleged either form of interference. The complaint offers only conclusory assertions that the Defendants intended to cause her student contracts to be breached. It contains no specific allegations identifying which Defendant interfered with which contract—or what actions were taken to bring about a breach. Likewise, the claim for interference with business expectations fails to allege facts supporting an improper motive. Even assuming the Defendants' actions affected Hamilton's business relationships, the complaint does not plausibly show that they did so with an illegitimate purpose. *See Malone v. Jefferson County Board of Education*, No. 2019-ca-1398, 2021 WL 137762, at *6 (Ky. Ct. App. Jan. 15, 2021) (tortious interference with business expectations requires a showing of "intentional interference without justification") (quoting *PBI Bank*, 535 S.W.3d at 715).

As for the actual closure of the school, Hamilton fails to offer any facts indicating the Defendants lacked a legal justification for their conduct. The Board declined to renew Hamilton's school license based on her failure to pay Board-imposed fines—including one she had not timely appealed. Kentucky law authorizes the Board to refuse to renew a license for failure to comply with its regulations.

14

Ky. Rev. Stat. 317A.140(1)(h). That licensing decision fell squarely within the Board's statutory and regulatory authority; Hamilton offers no reason why it wouldn't provide a lawful basis for the business closure, regardless of the resulting impact on Hamilton's contracts or business relationships.

Because Hamilton failed to respond to the Defendants' arguments and, in any event, failed to allege facts sufficient to support either claim, the Court grants the motion to dismiss Counts 6 and 7.

### 7. Count 8: Civil conspiracy

Hamilton's initial complaint also brings a civil conspiracy claim against Campbell, Shrout, Meredith, and McDaniel—alleging that they agreed to commit the violations alleged in Counts 1, 2, 3, 6, and 7.

Civil conspiracy is not an independent tort under Kentucky law; it requires an underlying unlawful act and a factual basis to infer an agreement to commit it. *See James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002). Because each of the underlying claims fails, the conspiracy claim necessarily fails as well. Regardless, the complaint does not contain factual allegations reasonably implying a conspiratorial agreement. Hamilton alleges "on information and belief" that McDaniel recruited Campbell to drive her out of business, but she pleads no facts suggesting that Campbell agreed to do so or that Shrout or Meredith participated in any joint plan. The Court therefore grants the motion to dismiss Count 8.

## B. Hamilton's Motion to Amend

The Defendants contend that each new count in Hamilton's proposed amendment fails to state a claim and is therefore futile. "A court need not grant leave to amend … where amendment would be 'futile.'" *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* (citing *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980)). The question on which the motion for leave turns, therefore, is whether each new count would survive a motion to dismiss.

### 1. Counts 1–2: Unlawful discrimination

Hamilton alleges that McDaniel racially discriminated against her. McDaniel allegedly (1) refused to consider Hamilton as her replacement upon retirement—favoring a white woman with fewer qualifications—and (2) treated her unfavorably during the training program. Hamilton advances these claims under KRS § 344.040 (unlawful failure to hire) and § 344.070 (discrimination in training or apprenticeship).

These claims are time-barred. Kentucky requires any "action for a violation of KRS 344.030 to 344.110" to "be commenced within three (3) years after the cause of action accrued." Ky. Rev. Stat. § 413.115. Hamilton expressed interest in McDaniel's position in 2019, before she enrolled at WKCTC. Amended Complaint ¶¶ 32–37. McDaniel's alleged misconduct—refusing to consider Hamilton, retaliating against her, and withholding "important instruction"—occurred while Hamilton was enrolled at the school in 2020. ¶¶ 38, 40, 119–20. But Hamilton filed her original complaint on July 24, 2024—more than three years later. Because the statute of limitations had expired by then, the proposed claims are time-barred even assuming they relate back to the original filing.

And even if the claims were timely, they would still fail because McDaniel was not an "employer" within the meaning of KRS Chapter 344. "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997). "Because KRS Chapter 344 mirrors Title VII," that rule applies "equally … to KRS Chapter 344." *Id.* At the time of the alleged discrimination, McDaniel served as the college's cosmetology program coordinator. Amended Complaint ¶ 118. None of Hamilton's allegations suggests that McDaniel's position as an employee also made her an employer within the meaning of KRS § 344.030. So McDaniel cannot be held liable in her individual capacity under these provisions.

Finally, the claims fail to plausibly allege racial discrimination. The amended complaint pleads no specific facts supporting an inference that McDaniel's conduct was racially motivated. Instead, Hamilton speculates that "McDaniel felt threatened by her" and "wonder[s]" whether that was due to "her race, her experience, her qualifications, her ambition, the positive relationships she had built with the students, or a combination thereof." Amended Complaint ¶ 42. These allegations—framed as speculation about possible motives without any factual support—do not satisfy Rule 8. *See Sam Han v. University of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) ("[F]actual allegations must do more than create speculation or suspicion.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553–54 (2007)).

In reply, Hamilton does not engage with any of the Defendants' arguments about futility. She asserts only that the new claims "have substantial merit and would contribute meaningfully to the case." Reply in Support of Motion to Amend (DN 18) at 2. That is hardly enough to save this claim. Because the allegations are untimely, fail to state a claim, and rest on speculative allegations, Counts 1 and 2 are futile, and the Court denies the motion to add them.

Count 3: Racial discrimination in a public accommodation

Hamilton alleges that McDaniel denied her the full and equal enjoyment of the community-college experience based on her race, in violation of KRS § 344.120.

16

Because Kentucky courts have not yet clarified what's required to state such a claim, and because KRS § 344.120 bears "similarities" to 42 U.S.C. § 1981, this Court has borrowed the § 1981 standard for § 344.120 claims. *Hinton v. American Airlines, Inc.*, No. 3:23-cv-271, 2024 WL 102218, at *4 (W.D. Ky. Jan. 9, 2024). Under that standard, a plaintiff must plausibly allege that she was either (1) deprived of services that were provided to similarly situated individuals outside the protected class or (2) treated in a "markedly hostile manner" that supports a reasonable inference of discrimination. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 871 (6th Cir. 2001).

Hamilton does not allege that McDaniel denied her access to the cosmetology program or its classes. Instead, she contends that McDaniel "withheld important instruction," punished her based on "vague or unspoken expectations," and ultimately "ceased all communication," which allegedly made it harder for Hamilton to complete the program. Amended Complaint ¶¶ 40, 48. But Hamilton still completed the program and does not allege that she was removed, barred, or failed. Her complaint concerns the quality of instruction she received, not the availability of services. Courts have held that such claims do not state a public-accommodation deprivation. *See Hinton*, 2024 WL 102218, at *5 (no deprivation of airline's services where plaintiff still took the flight).[10]

Nor does Hamilton identify any similarly situated individuals outside her protected class who received better treatment. Although she alleges that McDaniel began treating her worse after she expressed interest in taking McDaniel's job, she points to no other students who expressed interest in the job but were treated differently. Without comparators who are similarly situated "in all *relevant* respects," Hamilton cannot show discriminatory deprivation of services. *See Blount v. Stanley Engineering Fastening*, 55 F.4th 504, 511 (6th Cir. 2022).

Hamilton also fails to plead that she received services in a "markedly hostile manner" due to her race. Courts have explained that such a showing requires conduct that is "profoundly contrary" to the merchant's interests, "arbitrary on its face," and so far outside business norms that it raises an inference of discrimination. *Willis v. 8UP Elevated Drinkery & Kitchen*, No. 3:23-cv-295, 2024 WL 1182881, at *3 (W.D. Ky. Mar. 18, 2024) (quoting *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009)). Often this includes "serious examples of racially charged conduct—usually including racial epithets." *Id.* (quoting *Hinton*, 2024 WL 102218, at *5).

---

[10] Moreover, a claim challenging the quality of instruction given to Hamilton would appear to run afoul of Kentucky's educational-malpractice doctrine. *See Rich for Rich v. Kentucky Country Day, Inc.*, 793 S.W.2d 832, 836 (Ky. Ct. App. 1990) (refusing to recognize a cause of action for educational malpractice that "would require the courts … to sit in review of the day-to-day implementation of [educational] policies").

Hamilton alleges, in general terms, that McDaniel was hostile toward her. But she does not allege any racially charged language, overt expressions of bias, or other facts that would plausibly link McDaniel's conduct to Hamilton's race. At most, Hamilton speculates that McDaniel "felt threatened" and "wondered" whether it was because of her race, her qualifications, or other factors. Amended Complaint ¶ 42. These allegations fall short of the plausibility threshold because they offer only speculation—not facts—about whether race motivated McDaniel's conduct. *See Myles v. General Motors LLC*, No. 1:18-cv-172, 2022 WL 2440822, at *5 (W.D. Ky. July 5, 2022) ("[S]peculation ungrounded in fact is insufficient to establish" a race-based discrimination claim.) (quotation marks omitted).

Because Hamilton fails to allege either that McDaniel denied her access to services or treated her in a markedly hostile manner due to race, the proposed amendment could not establish liability even if accepted and deemed true. The complaint alleges poor treatment, but not racial discrimination. And it pleads no facts that would allow the Court to infer discriminatory intent. Count 3 therefore fails to state a claim, and the Court denies the motion to amend to include it.

### Count 4: Racial discrimination generally ("Violation of KRS 344.020")

Hamilton's fourth proposed claim cites KRS § 344.020, which declares that one of Chapter 344's general purposes is "[t]o safeguard all individuals within the state from discrimination because of … race." Ky. Rev. Stat. § 344.020(1)(b). But unlike the other sections of Chapter 344, this provision doesn't even create a private right of action. It merely outlines the Chapter's general purposes, while other provisions of Chapter 344—like those Hamilton invoked in Counts 1–3—establish specific, enforceable rights. *See Lewis v. Wheatley*, 528 F. App'x 466, 468 (6th Cir. 2013) (rejecting claim under a statute that "is merely a policy statement" because it "does not provide a private right of action") (quotation marks omitted). Because Count 4 does not assert a viable claim independent of those already alleged, the Court denies leave to amend as futile.

### Count 5: Conspiracy to retaliate or discriminate against a person

This Count alleges that all Defendants conspired to retaliate against Hamilton for reporting racial discrimination to the school's dean. Specifically, she claims that after she reported McDaniel's comments and behavior, McDaniel (1) retaliated by mistreating her and (2) conspired with Campbell to "unleas[h] the full power of the Kentucky Board of Cosmetology against [her], until they ran her out of business." Amended Complaint ¶ 144. Hamilton further alleges that other Defendants joined the conspiracy by failing to "questio[n] … the relentless assault into [her] personal livelihood" and instead "coordinat[ing] with Campbell and McDaniel to drive [her] out of business." ¶ 146.

18

Kentucky law makes it "an unlawful practice for . . . two (2) or more persons to conspire . . . [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter." Ky. Rev. Stat. § 344.280. Retaliation claims under Chapter 344 track the framework applied to federal Title VII retaliation claims. *Montell v. Diversified Clinical Services, Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Brooks v. Lexington–Fayette Urban County Housing Authority*, 132 S.W.3d 790, 801–02 (Ky. 2004)). When based on circumstantial evidence, those claims proceed under the *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973)). That requires Hamilton to show (1) she engaged in protected activity, (2) the defendant knew of it, (3) the defendant took a materially adverse action, and (4) a causal connection between the two. *Id.*

Hamilton's claim against McDaniel falters at the fourth step. The allegations fail to show a causal connection between Hamilton's report to the dean and McDaniel's conduct thereafter. If anything, the causal arrow flies the other way: McDaniel's adverse behavior allegedly began *before* the complaint and did not materially change afterward. And when "the real cause of the adverse action occurred before the (alleged) protected activity," a plaintiff cannot establish causation. *Mishos v. McKesson Corp.*, No. 2:22-cv-1666, 2024 WL 2784333, at *4 (S.D. Ohio May 30, 2024).

That's the situation here, even according to Hamilton's own allegations. She reported McDaniel to the dean for rudeness and withholding instruction—conduct attributed at the time both to her decision to apply for McDaniel's job and to racial discrimination. Amended Complaint ¶¶ 37–46. After the report, McDaniel allegedly continued to mistreat Hamilton by refusing to answer questions and withholding instruction ("effectively blackballing her"). ¶¶ 48–49. But that does not amount to a meaningful change in behavior: Hamilton's own allegations show that the mistreatment began before her discrimination complaint and, at least in part, stemmed from her job application. That timeline breaks any causal chain. *See Mishos*, 2024 WL 2784333, at *4.

To the extent Hamilton argues that McDaniel's behavior escalated—for example, by cursing at her—that contention (which is hardly clear) still falls short. Use of profanity by itself does not "rise to the level of an adverse … action." *Kinamore v. EPB Electric Utility*, 92 F. App'x 197, 202 (6th Cir. 2004). And even if it did, the amended complaint offers no plausible allegation that McDaniel's refusal to instruct Hamilton materially worsened after the report.

The claim also fails against the other Defendants for lack of a causal connection (as well as the lack of any meaningful change in behavior attributable to race). Their alleged adverse conduct began in August 2022—nearly two years after Hamilton reported McDaniel in October 2020. *See* Amended Complaint ¶¶ 45, 73, 84. That temporal gap alone defeats any inference of causation. When two years have elapsed

19

between a protected act and the alleged retaliation, the plaintiff must "present some evidence linking the two events." *Hillman v. Shelby County*, 515 F. App'x 365, 370 (6th Cir. 2013). But Hamilton never alleges that anyone other than McDaniel and Campbell even knew about the 2020 report. And as for those two, Hamilton offers only the conclusory statement that they "conspired with one another to retaliate against" her. Amended Complaint ¶ 143. She identifies no facts linking her 2020 complaint to the inspections and investigations Campbell initiated in 2022. That missing link is fatal under *Hillman*.

Because Hamilton has not plausibly alleged a causal connection between her protected activity and any adverse treatment by any Defendant, she fails to state a retaliation claim under KRS § 344.280. The Court therefore denies as futile her motion to add Count 5 of the proposed amended complaint.

## ORDER

The Court grants the Defendants' motion to dismiss (DN 8) without prejudice and denies Hamilton's motion to amend (DN 14).

Benjamin Beaton, District Judge
United States District Court

September 10, 2025