UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
NO. 5:24-CV-00128

**COURTNEY HAMILTON**                                                                                   **PLAINTIFF**

v.

**JULIE CAMPBELL, et al.**                                                                              **DEFENDANTS**

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Board employees Julie Campbell, Tanya Shrout, Shawante Elery, and Lea Ann Brewer and Defendant Board Members Margaret Meredith, Zachary Casa, Tracy McDaniel, Bridget Teall, and Mickey Hobbs respectfully moves this Court to dismiss Plaintiff Courtney Hamilton's Second Amended Complaint, DN 45, against them. Ms. Hamilton's Second Amended Complaint is nothing more than a reprise of her original Complaint, DN 1 and First Amended Complaint, DN 14-1, which this Court dismissed and denied, respectively. Opinion and Order Granting Motion to Dismiss and Denying Motion to Amend, DN 32 ("Opinion and Order"). Defendants respectfully request oral argument, pursuant to LR 7.1(f).

### I.    **Factual and Procedural History**[1]

Ms. Hamilton's former attorney filed her original Verified Complaint, DN 1, on July 24, 2024. Defendants motioned to dismiss. DN 5. Ms. Hamilton's former counsel motioned to amend Ms. Hamilton's Complaint on November 16, 2024. DN 14-1. Defendants opposed Ms. Hamilton's Amended Complaint on the grounds of futility.

---

[1] Due to the procedural posture of this Motion, Plaintiff's allegations are treated as true. If this Motion is denied, Defendants reserves the right to challenge some or all of the allegations set forth in Plaintiff's Complaint. *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020).

Page **1** of **15**

Response to Motion to Amend, DN 17. On May 7, 2025, the parties proceeded to an in-person hearing concerning Defendants' dismissal motion and Ms. Hamilton's motion for leave to amend.

This Court issued a detailed, 20-page Opinion and Order granting Defendants' dispositive motion and denying Ms. Hamilton leave to amend her complaint. DN 32. This Court allowed Ms. Hamilton to amend her Complaint within 21 days, but Ms. Hamilton instead appealed. The Court of Appeals held that Ms. Hamilton's appeal was "[t]oo late because she appealed a September 10 order on October 24—outside the ordinary 30-day deadline." Order, DN 44, Page ID # 873. But, her appeal was also too early "because this Court's dismissal with leave to amend wasn't a final order subject to appellate review . . ." *Id.* This Court therefore allowed Ms. Hamilton until January 30, 2026 to amend her Complaint. *Id.* at Page ID # 874.

Ms. Hamilton's Second Amended Complaint followed.[2] DN 45. In the latest iteration of her Complaint, Ms. Hamilton claims that she "lawfully owned and operated the Meraki Beauty School as a licensed cosmetology school." 2nd Am. Compl., DN 45, Page ID # 876 (¶ 9).

Ms. Hamilton concedes that the Kentucky Board of Cosmetology received "numerous complaints" about her school "[b]etween August 2022 and May 2023." *Id.* (¶ 10); *id.*, Exhibits A through Y, DN 45-1 through 45-25 (providing copies of each complaint against Meraki). Due to these complaints, unspecified Defendants allegedly conducted "more than ten inspections and initiated multiple investigations" of Meraki between

---

[2] Ms. Hamilton did not explicitly obtain this Court's permission to file her Second Amended Complaint pursuant to Fed. R. Civ. P. 15. However, this Court's permission to file is likely implied in the Order, DN 44.

"March 2022 through July 2023." 2nd Am. Compl., DN 45, Page ID # 876 (¶ 18). But, other unspecified Defendants allegedly failed to "formally notify" Ms. Hamilton of the investigations, "identify the basis for any investigation or provide documentation reflecting when any investigation began." *Id.* (¶ 19).

Ms. Hamilton further claims that, in October 2022, she was the victim of a glitch in the Board's electronic hour submission system that "caused student hours to appear late" when the hours were actually entered timely. *Id.* at Page ID # 877 (¶ 28). Ms. Hamilton claims that she "promptly notified [unnamed] KBC staff by email" to explain that "the issue was related to system behavior and time-zone differences." *Id.* (¶ 29). Unspecified "Defendants later treated the hour submission as violations and used them as part of the basis for enforcement actions against Plaintiff." *Id.* at Page ID # 878 (¶ 31).

## II. **Standard of Review**

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court stated that a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thus, when reviewing a motion to dismiss, courts undertake a two-step analysis. First, the court presumes the truth of a well-plead factual allegation. *Id.* Courts then consider whether the complaint contains "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While Fed. R. Civ. P. 8 does not require detailed allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "A pleading that offers labels and conclusions, or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted). "Nor does a complaint suffice

if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal citations omitted). Instead, a complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. Argument

This case should be dismissed against all Defendants for the same reasons established in this Court's Opinion and Order, DN 32. Ms. Hamilton's Second Amended Complaint fails to state sufficient factual content to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. Defendants are also entitled to qualified official immunity for the claims against them. Counts 1, 2, and 3 are fully or partially barred by the limitations period. Finally, Ms. Campbell and the Board Members are entitled to absolute immunity from all counts against them.

A. Counts 1, 2, and 3 are barred by the statute of limitations.

As this Court recently held, "The statute of limitations for § 1983 claims is the relevant state's statute of limitations for personal-injury torts." Order, DN 32, Page ID # 833 (citing *Beaver Street Investments, LLC v. Summit County, Ohio*, 65 F.4th 822, 826 (6th Cir. 2023)). Constitutional lawsuits must begin "within one (1) year after the cause of action accrued." KRS 413.140(1)(a).

Ms. Hamilton originally stated that the allegedly unconstitutional investigations occurred between March 2022 and March 2023. *See* Am. Compl, DN 14-1, Page ID # 22 (¶ 115). She now claims that the investigations of her school stretched into July 2023. 2nd Am. Compl., DN 45, Page ID # 876 (¶ 18). Yet, in her Amended Complaint, DN 14-1, Page ID # 15 (¶ 83), Ms. Hamilton admitted her school closed "in July of 2023." It appears unlikely that Defendants would have continued their allegedly unconstitutional

investigations through July 2023 when Ms. Hamilton's school was closed. It seems far more likely that this Court was correct in its original conclusion that a claim resting on those violations is time-barred, because the investigations ceased in March 2023. Order, DN 32, Page ID # 833.

Even if Ms. Hamilton's revised timeline is accurate, the vast majority of the alleged disparate treatment, due process violations, and retaliation occurred prior to July 2023. Ms. Hamilton filed her original Complaint in July 2024. *See* DN 1. Therefore, the majority of the conduct forming the basis of Counts 1 through 3 for alleged Equal Protection violations, Due Process violations, and § 1983 retaliation are barred by KRS 413.140(1)(a).

B. Count 1: Ms. Hamilton failed to state an Equal Protection claim.

Count 1 alleges that unspecified "Defendants" violated the Equal Protection Clause by "selectively enforce[ing] [unspecified] regulatory authority against Plaintiff based on race, treating Plaintiff differently than [unnamed] similarly situated white-owned schools." 2nd Am. Compl., DN 45, Page ID # 878 (¶ 28).

As in her original and First Amended Complaints, Ms. Hamilton's Second Amended Complaint fails "because it doesn't allege that any named Defendant was personally responsible" for the alleged selective enforcement or took any specific actions against Ms. Hamilton. Opinion and Order, DN 32, Page ID # 834. "Yet the Sixth Circuit has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Id.* (quoting *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011) (citation modified).

Additionally, although the Complaint alludes to unnamed "white-owned school" owners who purportedly do not experience regulatory enforcement (*id.* at Page ID ## 876 (¶ 15), 878 (¶ 28)), Ms. Hamilton does not name those school owners. The Sixth Circuit affirms dismissal when the plaintiff provided only "[c]onclusory allegations that a hypothetical Caucasian competitor would have received more favorable treatment." *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *7 (6th Cir. Aug. 18, 2022) (unpublished) (copy attached as Exhibit A). *See also Rondigo, LLC v. T'ship of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011) (rev'g district court's failure to dismiss where plaintiff asserted no comparable entities who received preferential treatment).

Defendants are also entitled to qualified immunity. Courts cannot "casual[ly] accept[]" allegations of unlawful discrimination where, as here, "[n]othing but legal conclusions suggests that the state defendants acted with unlawful discriminatory animus." *Rondigo,* 641 F.3d at 684 (citing *Iqbal,* 556 U.S. 662 at 678-79). Accordingly, Defendants are entitled to qualified immunity, because there is nothing to suggest that they violated Ms. Hamilton's clearly established rights. *Id.*

In summary, this Court should again dismiss Ms. Hamilton's Equal Protection claims against all Defendants. Ms. Hamilton failed to connect the complaint's allegations of Equal Protection violations to specific defendants. *Heyne*, 655 F.3d at 564. She provided only "[c]onclusory allegations that a hypothetical Caucasian competitor would have received more favorable treatment." *Reynolds*, 2022 WL 3500191, at *7. And, Defendants are entitled to qualified immunity. *Rondigo,* 641 F.3d at 684.

C. Count 2: Ms. Hamilton failed to state a claim for Due Process violations.

In Count 2, Ms. Hamilton claims that all "Defendants" violated her Due Process rights by "conducting unexplained investigations, denying Board review, and shutting down Plaintiff's school." 2nd Am. Compl., DN 45, Page ID # 878 (¶ 29).

As before, "[t]he problem for Hamilton is that the complaint doesn't tie the ignored appeal to any specific person." Opinion and Order, DN 32, Page ID # 835. "A § 1983 plaintiff must allege that a particular defendant, acting under color of state law, violated her rights." *Id.* (quoting *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation modified). Although Ms. Hamilton may have a "colorable defense" to the alleged closure of her school, "§ 1983 requires her to tie the deprivation of process to a specific defendant," which she "never does—not even implicitly . . ." *Id. See also Bettio v. Village of Northfield*, 775 F.Supp. 1545, 1563 (N.D. Ohio 1991) (granting qualified immunity when a Complaint does not allege that a particular defendant took part in the actions giving rise to a Due Process count).

Ms. Hamilton's procedural due process theory also "rest[s] on the mistaken premise that state inspectors needed advance notice or a warrant to enter Hamilton's business." Opinion and Order, DN 32, Page ID # 836. However, "Kentucky regulations allow inspectors to enter licensed establishments during reasonable working hours or at any time when the establishment is open." *Id.* (quoting 201 KAR 12:060 Section 2(1)) (citation modified). Ms. Hamilton does not allege that any of the defendants violated this regulation; nor does she argue that the regulation itself violates the Due Process Clause.

Therefore, Count 3: Due Process should be dismissed against Defendants. Ms. Hamilton failed to connect the complaint's allegations of Due Process violations to any

specific defendant, she cannot state a colorable Due Process claim for simply being inspected, and Defendants are entitled to qualified immunity. *See Redding*, 241 F.3d at 532; *Bettio*, 775 F.Supp. at 1563.

D. <u>Count 3: Ms. Hamilton failed to state a claim for § 1983 retaliation.</u>

Ms. Hamilton contends that unspecified "Defendants retaliated against Plaintiff [in unspecified ways] for engaging in protected activity by escalating inspections and enforcement actions." 2nd Am. Compl., DN 45, Page ID # 878 (¶ 30).

To establish an unconstitutional retaliation claim, plaintiffs must prove: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Helwig v. Pennington*, 30 Fed. Appx. 516, 519 (6th Cir. 2002) (citation modified).

As an initial matter, Count 3 "doesn't tie the ignored appeal to any specific person." Opinion and Order, DN 32, Page ID # 835. "A § 1983 plaintiff must allege that a particular defendant, acting under color of state law, violated her rights." *Redding*, 241 F.3d at 532.

Nor has Ms. Hamilton alleged facts sufficient to prove the remaining elements. Other than by filing her original Complaint, Ms. Hamilton does not claim that she "escalat[ed]" her alleged concerns. Ms. Hamilton's original Complaint cannot serve as the basis for alleged retaliatory actions taken before she filed her Complaint. *See, e.g.*, *Wheeler v. City of Columbus*, No. 2:16-CV-1159, 2019 WL 3753579, at *15 (S.D. Ohio Aug. 8, 2019) (unpublished) (Exhibit B) (holding that "retaliation in advance – a sort of 'pretaliation' – is not a cause of action.").

And, similarly to Counts 1 and 2, Ms. Hamilton failed to allege that "a particular defendant, acting under color of state law, violated her rights." Opinion and Order, DN 32, Page ID # 835 (quoting *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation modified). Therefore, Defendants are entitled to qualified immunity. *Bettio*, 775 F.Supp. at 1563 (granting qualified immunity when a Complaint does not allege that a particular defendant took part in the actions giving rise to a Constitutional claim).

Accordingly, Count 3 should be dismissed. Ms. Hamilton failed to connect the alleged retaliation to any specific Defendant and has not alleged facts sufficient to state a claim for which relief can be granted. Defendants are entitled to qualified immunity. *Redding*, 241 F.3d at 532; *Wheeler*, 2019 WL 3753579, at *15.

E.    Count 4: Ms. Hamilton failed to state a claim for civil conspiracy.

Ms. Hamilton's Count 4 states that "Defendants agreed and acted in concert to deprive Plaintiff of her [unspecified] constitutional rights." 2nd Am. Compl., DN 45, Page ID # 878 (¶ 31). Yet, as this Court found in its Opinion and Order, "[c]ivil conspiracy is not an independent tort under Kentucky law; it requires an underlying unlawful act and a factual basis to infer an agreement to commit it." DN 32, Page ID # 840 (citing *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. App. 2002). Because each of Ms. Hamilton's underlying Constitutional claims fail, her conspiracy claim also fails. *Id.*

Also, the Second Amended Complaint does not contain any factual allegations that reasonably imply "a conspiratorial agreement"—simply a "naked assertion" that Defendants engaged in a conspiracy. *Iqbal*, 556 U.S. 662; 2nd Am. Compl., DN 45, Page ID # 878 (¶ 31).

Finally, Ms. Hamilton again failed to allege specific facts showing how each defendant participated in the alleged conspiracy. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation modified). This omission entitles Defendants to qualified immunity. *Bettio*, 775 F.Supp. at 1563.

    F. <u>Count 5: Ms. Hamilton failed to state a claim for negligence or gross negligence.</u>

Ms. Hamilton alleges that Defendants "breached their duties to conduct fair, impartial, and lawful investigations, resulting in harm to Plaintiff." 2nd Am. Compl., DN 45, Page ID # 878 (¶ 32).

Defendants are entitled to qualified immunity for Ms. Hamilton's state law negligence claim, pursuant to *Yanero v. Davis*. 65 S.W.3d 510, 521 (Ky. 2001). *Yanero* holds that "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions . . . (2) in good faith; and . . . (3) within the scope of the employee's authority." *Id.* at 522. Inspections "fall[] comfortably within the discretionary authority of public officials charged with regulating licensed cosmetology schools." Opinion and Order, DN 32, Page ID # 838. 201 KAR 12:060 Section 2(1) "expressly permit[s]" Board employees to "inspect a school whenever it was open." *Id*. Ms. Hamilton does not claim that Defendants acted outside of their authority in conducting inspections or acted in bad faith while doing so.

"Nor has Hamilton plausibly alleged gross negligence." *Id*. Gross negligence requires a plaintiff to show that the defendants both failed to exercise reasonable care and also engaged in wanton or reckless disregard for others' rights or safety. *Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56, 59 (Ky. 2013). Ms. Hamilton does not even allege such

conduct, much less include specific facts about Defendants' purported motives. *See generally* 2nd Am. Compl., DN 45.

Ms. Hamilton's negligence claims are "barred by qualified official immunity" and her gross negligence count "fail[s] to state a plausible claim for relief." Opinion and Order, DN 32, Page ID 839. Therefore, this Count should be dismissed.

G.  Count 6: Ms. Hamilton failed to state a claim for tortious interference.

In Count 6, Ms. Hamilton asserts that all Defendants engaged in some unspecified conduct, which constituted tortious interference with contracts and business expectancies. 2nd Am. Compl., DN 45, Page ID # 878 (¶ 33).

To establish her claim of tortious interference with a contract, Ms. Hamilton must allege, among other factors, that a defendant "intended to cause a breach" of a specific contract and lacked any "privilege or justification" for doing so. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. Ct. App. 2012) (aff'g summary judgment). The related claim for interference with prospective business relationships requires allegations that the defendant "intentionally interfered" with the plaintiff's business and was motivated by an "improper" purpose. *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. Ct. App. 2014).

Again, Ms. Hamilton has failed to state a claim for either form of tortious interference. The Second Amended Complaint offers only conclusory assertions that Defendants "intentionally interfered with Plaintiff's student contracts and . . . business relationships." 2nd Am. Compl., DN 45, Page ID # 878 (¶ 33). "It contains no specific allegations identifying which Defendant interfered with which contract—or what actions were taken to bring about a breach." Opinion and Order, DN 32, Page ID # 839. Similarly,

the business expectancy claim fails because Ms. Hamilton "fails to allege facts supporting an improper motive." *Id.*

In summary, this Court should dismiss Count 6, because Ms. Hamilton "failed to allege facts sufficient to support either claim" for tortious interference with contract and business expectancies. *Id.* at Page ID # 840.

H. <u>Ms. Campbell and the Board Members entitled to absolute immunity for all claims against her.</u>

Ms. Campbell and the Board Members entitled to absolute immunity. The United States Supreme Court has held that "those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." *Butz v. Economou*, 438 U.S. 478, 516, 98 S.Ct. 2894, 57 L.Ed.2d 859 (1978). While the *Butz* decision involved claims against federal officials, the Sixth Circuit has made clear that the absolute immunity recognized in *Butz* also extends to state officials. *Watts v. Burkhart*, 978 F.2d 269, 273 (6th Cir. 1992).

In determining the applicability of absolute immunity, the court takes a functional approach and looks to "the nature of the function being performed rather than the identity of the actor performing it." *Cooperrider v. Woods*, 127 F.4th 1019, 1031 (6th Cir 2025), *quoting, McKenzie, Grant, Konvalinka & Harrison, PC v. Banks (In DN McKenzie)*, 716 F.3d 404, 412 (6th Cir. 2013). *See also Sangster v. Ky. Bd. of Med. Licensure*, 454 S.W.3d 854, 859 (Ky. App. 2014) (applying the concept of absolute immunity to state law claims) (quoting *Butz*, 438 U.S. at 516.

At all relevant times, Ms. Campbell was the Executive Director of the Kentucky Board of Cosmetology, which is state agency of the Commonwealth of Kentucky tasked

with regulating the practices of cosmetology, esthetics, and nail technology within the state. KRS 317A.020. As Executive Director, Ms. Campbell was responsible for administering the provisions of KRS Chapter 317A and the KBC's policies and administrative regulations. KRS 317A.040. Her duties included coordinating all administrative matters (201 KAR 12:010), including inspections and investigations of licensees and applicants (201 KAR 12:010; 12:030 and 12:060), assisting in the complaint and disciplinary process (201 KAR 12:190), and taking disciplinary actions, including by way of an emergency action (201 KAR 12:010 and KRS 317A.020).

Similarly, the Board Members served on the Board of Cosmetology pursuant to KRS 317A.030 where they are provided authority to have complete supervision over the practices of cosmetology, nail technology, and esthetics; licensees of these practices; and schools preparing future professionals of the respective industries. KRS 317A.030(1) Board members are not full-time employees, but appointees of the Governor and serve for two years, meeting at times deemed necessary by the board to discharge its duties. KRS 317A.030(3) and (8). The Board is authorized to enforce the provisions of the chapter through inspections, investigations, and administrative hearings as delineated under KRS 317A.020. To carry out the administration, Board members can employ inspectors and any other personnel reasonably necessary to carry out the provisions of the chapter. KRS 317A.040(1).

Herein, Ms. Campbell was serving as the executive director of a regulatory authority, and the Board Members served on the Board of Cosmetology. All of the claims against them concern alleged conduct they undertook with respect to the Board's regulatory licensing, and inspection/investigation functions. Any role that Ms. Campbell and the Board Members had with respect to the same are all quasi-judicial functions

related to the Board's regulatory authority. As such, Ms. Campbell and the Board Members are entitled to absolute quasi-judicial immunity from all of the Plaintiffs' claims.

## IV. Conclusion

In conclusion, for the reasons stated above, this Court should dismiss Plaintiff Courtney Hamilton's reprised claims against Defendants Tanya Shrout, Shawante Elery, Lea Ann Brewer, Julie Campbell, Margaret Meredith, Zachary Casa, Tracy McDaniel, Bridget Teall, and Mickey Hobbs. Ms. Hamilton's Second Amended Complaint fails to state a claim and the defendants are entitled to qualified official immunity.

Respectfully Submitted,

/s/ Jennifer Wolsing

Jennifer Wolsing
Public Protection Cabinet
500 Mero St.
Frankfort, KY 40601
(502) 401-7617
jennifer.wolsing@ky.gov

/s/ Eden Davis Stephens

Eden Davis Stephens
General Counsel
Kentucky Board of Cosmetology
1025 Capital Center Dr.
Frankfort, KY 40601
502-782-0774
eden.stephens@ky.gov

/s/ Donald M. Wakefield
DONALD M. WAKEFIELD, ESQ.
(KBA# 89534)
GESS MATTINGLY & ATCHISON, P.S.C.
201 West Short Street, Suite 102
Lexington, KY 40507-1269
Telephone: 859-252-9000
dwakefield@gmalaw.com

<u>Certificate of Service</u>

   I hereby certify that a true copy of the foregoing was served electronically via ECF on January 2, 2026 to the following:

David Borum
517 West Ormsby Avenue
Louisville, KY 40203
[dsborum@gmail.com](mailto:dsborum@gmail.com)
[Attorney for Plaintiffs]

United States District Court for the Western District of Kentucky
501 Broadway, Suite 127
Paducah, KY 42001-6801

                 <u>/s/ Eden Davis Stephens </u>