**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NUMBER 5:24-cv-00128-BJB-LLK**

**COURTNEY HAMILTON** **PLAINTIFF**

**v.**

**JULIE CAMPBELL, ET AL.** **DEFENDANTS**

**REPORT AND RECOMMENDATION**

This matter was referred to Magistrate Judge Lanny King pursuant to 28 U.S.C. § 636(b)(1)(B) to prepare a report and recommendation. [DN 49]. Before the Court is Defendants' Joint Motion to Dismiss for Failure to State a Claim. MTD [DN 47]. Plaintiff did not timely file a response, so the Court ordered her to show cause why the MTD should not be granted. Show Cause Order [DN 50]. Plaintiff responded within the time required by the Show Cause Order, MTD Response [DN 51], Defendants filed a Reply, [DN 53], and Plaintiff filed a Sur-Reply, [DN 54], without leave of the Court.[1] The matter being ripe for review, it is **RECOMMENDED** that the Motion to Dismiss, [DN 47], be **GRANTED** and the Second Amended Complaint be **DISMISSED** with Prejudice.

**Procedural History**

Plaintiff Hamilton's former attorney filed her Complaint, [DN 1], on July 24, 2024. Defendants moved to dismiss, [DN 5], Hamilton's counsel moved to amend, Amended

[1] "District courts are afforded broad discretion in deciding whether to permit a party to file a sur-reply[.]" *Vaughn v. Hawkins*, No. 5:14-CV-00099-TBR, 2018 WL 2210873, at *2 (W.D. Ky. May 14, 2018). The Court did not grant permission here but has reviewed the Sur-Reply, in part, to see if Plaintiff could explain her inconsistent filings, *see, e.g.,* Reply at 9. No such explanation appears on the record.

Complaint [DN 14-1], and Defendants opposed amendment as futile, [DN 17]. District Judge Beaton dismissed the Complaint, considered the additional counts raised in the proposed Amended Complaint, and denied leave to add the additional counts. Dismissal Order [DN 32]. Dismissal was without prejudice, and the Court allowed Hamilton to "move for leave to amend … if she can do so consistent with Rule 11." *Id.* at 2. Twelve days later, Plaintiff's counsel withdrew, [DN 34], and Plaintiff, proceeding *pro se*, later appealed the Dismissal Order, which the Court of Appeals dismissed as untimely (being both too late—beyond the ordinary 30-day deadline—and too early—before entry of a final order), [DNs 41 & 42].

Within the time allowed by subsequent orders of the Court, *see* [DNs 34 & 44], but without moving for leave to do so, Plaintiff filed a Second Amended Complaint, SAC [DN 45]. Defendants argue that it should be dismissed for the same reasons that the Dismissal Order provided. MTD at 4.

**Factual Background**

The Dismissal Order aptly summarized the factual allegations contained in Plaintiff's original and Amended Complaint relating to Plaintiff's endeavor to run a cosmetology school, which shut down after two years due to an alleged conspiracy orchestrated by the Defendants:

> Courtney Hamilton opened a cosmetology training school in Murray shortly after graduating from a nearby training program at Western Kentucky Community and Technical College. Less than two years later, Hamilton's school shut down after the Kentucky Board of Cosmetology denied her application to renew its license. In response, Hamilton sued several Board employees and members whose actions, in her view, led to the business's closure in September 2023. …
>
> The story, which the Court accepts as true at this stage, begins with Hamilton's 2019 visit to WKCTC, where she inquired about enrolling in its cosmetology-instruction program. Amended Complaint (DN 14-1) ¶ 32–33. She had already worked as a licensed cosmetologist for 16 years and was considering enrolling as part of her plan to open her own training school. ¶ 32. During that

visit, she learned that Defendant Tracy McDaniel, the training program coordinator, planned to retire soon. ¶ 34. Hamilton expressed interest in eventually applying for the position. *Id.* Not long after she enrolled, she had submitted her résumé, unaware that McDaniel had already identified someone else to succeed her. ¶¶ 35–39.

That's when Hamilton's difficulties began. As set forth in the Amended Complaint, McDaniel imposed vague and unspoken expectations, withheld key instruction, and treated her with hostility. ¶¶ 39–44. Concerned that this might jeopardize her graduation, Hamilton—who is African American—reported to the dean that she believed McDaniel's conduct might stem from racial bias. ¶¶ 45–46. She based this concern partly on McDaniel's selection of a white successor and partly on what other students told her—namely, that McDaniel had previously mistreated another African American instructor. ¶¶ 36–37, 41–42. After Hamilton's report, which she believes was relayed to McDaniel, the two allegedly ceased communicating—except when McDaniel cursed at Hamilton in response to a question. ¶¶ 47–49.

Despite these tensions, Hamilton graduated. ¶ 50. But her difficulties continued beyond WKCTC. McDaniel and Defendant Julie Campbell, then executive director of the Board, conspired to retaliate against Hamilton and drive her business into the ground. ¶ 52. That retaliation, she says, took the form of repeated inspections, audits, and investigations initiated at Campbell's direction, along with a series of fines that Hamilton contends were baseless. ¶ 145. The Board, for its part, refused to reconsider them despite her appeal. ¶ 113.

Between March 2022, when Hamilton opened Meraki Beauty School, and January 2023, she alleges the Board inspected or audited her school at least ten times—far exceeding the two annual inspections required by regulation or the normal amount of supervision for an allegedly under-staffed agency. ¶¶ 8, 71–72, 97. One inspector interrogated a student about an unrelated incident, and another— Defendant Shawante Elery—cited a student for teaching without a license, even though Hamilton asserts the citation was unwarranted. ¶¶ 86–87, 94–95. The Board also opened an investigation after receiving a complaint from someone named Janie Huckaba, whom Hamilton alleges, "upon information and belief," "is not a real person." ¶ 98. Defendants Tanya Shrout and Margaret Meredith, who handled complaints, forwarded the allegation to the Board without verifying its validity. ¶ 174. Campbell herself then drove nearly five hours from Danville to investigate without contacting Hamilton or first determining whether the complaint had merit. ¶ 102. Hamilton alleges that the cumulative effect of these visits caused her stress-related health issues and prompted some students to withdraw out of fear the school might close. ¶¶ 103–106.

Separately, the Board fined Hamilton in August and September 2022 for failing to electronically submit her students' hours by the monthly deadline. ¶ 73. But Hamilton contends she submitted her August hours before the deadline under Central Time—her school's time zone in Murray—and the reporting system didn't specify a required time zone. ¶ 75. The next month, she says, the system showed a late login even though she had already submitted the report on time. ¶ 78. Defendant Lea Ann Brewer, the Board's school-hour coordinator, refused to

> rescind either fine even after Hamilton sent a screenshot of her timely September submission. ¶¶ 1, 76, 79. Hamilton filed a formal appeal of the September fine but received no response. ¶¶ 81.
>
> The final blow came in July 2023, when the Board denied her school's license-renewal application. ¶ 107. In August, the Board informed her by email that the denial was based on her failure to pay the outstanding fines. ¶ 112. Several weeks later, the Board's former general counsel and assistant director, Christopher Hunt, emailed Hamilton to apologize for never responding to her appeal. ¶ 114. He attributed the omission to a clerical error and notified her that the Board had decided to rescind the fine. Hunt Email (DN 11-2). Hamilton never appealed the license-renewal denial itself. Her school closed on September 14, 2023. ¶ 116.

Dismissal Order at 1-3.

Like the Amended Complaint, the SAC purports to bring "a claim for compensatory and punitive damages under KRS 344, 42 U.S.C.§ 1983, and Kentucky common law against several individuals associated with the Kentucky Board of Cosmetology[.]" SAC ¶ 1; Amended Complaint ¶ 1. But unlike the Amended Complaint, which supplements the original with additional allegations, the SAC takes the opposite approach, including only a small fraction of the allegations—with a few notable modifications. It also includes 28 exhibits, most of which are complaints to the Board about Plaintiff and the beauty school she was operating at the time.[2]

## <u>Standard of Review</u>

"After a responsive pleading has been served, a party may amend its pleading only by leave of court, and leave shall be freely given when justice so requires. A court need not grant

---

[2] *See, e.g.,* [DN 45-24] (complainant characterizing Plaintiff as a "bully" who "yelled and talked down to" students); [DN 45-24] (complainant characterizing Plaintiff as "rude, cussing students, [and] threatening with police if they come back after asking for a refund"); [DN 45-22] (complainant alleging that Plaintiff threatened and belittled multiple students until they attempted suicide); *see also Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016) (In ruling on a motion to dismiss, a court evaluates the complaint and documents attached to it.)

leave to amend, however, where amendment would be futile." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (internal quotation marks and citation omitted). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citations omitted).

## **Discussion**

### 1. **Count I: "Equal Protection (42 U.S.C § 1983)," SAC ¶ 28, is Time-Barred and Fails to State a Claim**

"All Defendants—both KBC employees and Board members—allegedly violated the Equal Protection Clause of the Fourteenth Amendment when they 'singled out' Hamilton 'for frequent, intense, and baseless investigation while not investigating similarly situated non-minority-owned businesses in similar situations.'" Dismissal Order at 8 (citing Complaint ¶ 94). The Complaint, *see, e.g.* ¶¶ 2, 7, 92-94, and Amended Complaint, *see, e.g.* ¶¶ 16, 36, 72, 76-77, 109, contain additional facts supporting this claim, but on this count, the SAC leaves little more than this conclusory, variously stated allegation, *see* SAC ¶ 15, 27-28. Rule 8(a) requires that a

complaint plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The allegations founded "upon information and belief," SAC ¶15, 17, that Defendants "selectively enforced regulatory authority against Plaintiff based on race," *id.* ¶ 28, are conclusory and not well-pleaded. For this reason alone, it should be dismissed.

More concerning than its comparative brevity, however, is the SAC's (suspect, and unexplained) inconsistency with its predecessors. The Court previously found that Plaintiff's § 1983 equal protection claims were time-barred as accruing "no later than March 2023, and the one-year limitations period had run before she filed her complaint" on July 24, 2024. Dismissal Order at 6, 8. The Complaint alleges that the last of Defendants' unjust inspections occurred in January 2023, *id.* at 6 n.5, and her Amended Complaint avers that the last one occurred around March 2023, *id.* at 6 (citing Complaint ¶¶ 67–68; Amended Complaint ¶ 115). Apparently attempting to dodge the time-bar, Plaintiff now alleges, without explanation or elaboration, that these inspections were conducted through July 2023, SAC ¶ 18, and in the Show Cause Response, [DN 52] at 8, claims yet another, "ongoing" investigation started on December 2, 2023.

The "Court must ordinarily accept as true all of the well-pleaded factual allegations of the complaint." *Ruff-EI v. Nicholas Fin., Inc.*, No. 2:12-CV-343, 2013 WL 12131190, at *2 (S.D. Ohio Mar. 4, 2013). But not all allegations are entitled to an assumption of truth. *Iqbal*, 556 U.S. at 680–81. "[I]nconsistent factual allegations" are "not well-pleaded and will not be assumed to be veracious." *Montague v. Schofield*, No. 2:14-CV-292-RLJ, 2016 WL 3977199, at *3 (E.D. Tenn. July 19, 2016) (citing *Iqbal*, 556 U.S. at 679; *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998) (agreeing that the district court was not required to accept as true

inconsistent allegations contained in a second amended complaint); *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997) (observing that a court need not accept as true 'factual claims that are internally inconsistent'); *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995) (noting that allegations in a complaint are binding and that a plaintiff can plead himself out of court by pleading facts that show he has no claim)). "Even though a *pro se* plaintiff's complaint should be liberally construed and the allegations be accepted as true," allegations that are "self-contradictory" may not be afforded the same deference. *Bomar v. Hatcliff,* 1986 WL 17215, at *1 (6th Cir. 1986); *see also Christian v. Altaire Pharms., Inc.*, No. CV 5:20-306-DCR, 2020 WL 6947478, at *2 (E.D. Ky. Nov. 25, 2020) ("[W]hen a party misrepresents relevant facts, the Court need not accept them as true."), *aff'd,* 2021 WL 3578812 (6th Cir. Aug. 10, 2021); Dismissal Order at 13 (citing *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).[3] These new claims relating to July or December 2023 inspections—which are somehow ongoing, into a school that was either "permanently closed" in July of 2023, SAC ¶ 27; AC ¶ 115, or temporarily closed "for approximately one month," Show Cause Response at 6—are implausible (if not impossible). Accordingly, the Court accepts the relevant "facts as described in the original complaint[s] as true," *see Wallace v. New York City Dep't of Corr,* No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996), and concludes that this Count is time-barred as having "accrued no later than March 2023," Dismissal Order at 6.

---

[3] Absent mandatory authority in the controlling jurisdiction holding otherwise, courts appear to exercise discretion in deciding how to parse contradictory allegations. *See Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *5 (M.D. Pa. Oct. 16, 2012) (collecting cases);.*Dotson v. Knox Cnty*., No. 3:15-CV-66-TAV-CCS, 2015 WL 8328545, at *1 (E.D. Tenn. Dec. 8, 2015) ("The facts here are taken from the original complaint and the proposed amended complaint, and if there are any inconsistencies, the facts are taken from the proposed amended complaint").

Furthermore, extending the limitation period "is of no avail for this plaintiff because" the allegations are "otherwise factually insufficient to state a cause of action." *Bomar,* 1986 WL 17215, at *1. In Response to Defendants' MTD, Plaintiff argues that her "claims accrued on or about August 1, 2023, when Defendants took final enforcement action by effectively shutting down Plaintiff's licensed school and locking her license." Response [DN 51] at 1. Bypassing the question of where the August 1, 2023, date comes from, this argument fails for the same reasons that are outlined in the Dismissal Order. Namely, the SAC still doesn't allege—with particularity or otherwise—that any named Defendant was personally responsible for temporarily "locking her license," *id.* at 1. *See* Dismissal Order at 9 (citing *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011)). So, for several reasons, Count I should be dismissed.

**2. <u>Count II: "Due Process (42 U.S.C § 1983)," SAC ¶ 29, Fails to State a Claim</u>**

Plaintiff claims that all "Defendants" violated her due-process rights by "conducting unexplained investigations, denying Board review, and shutting down Plaintiff's school." SAC ¶ 29. Like with the equal protection claim, the SAC doesn't tie a plausible due process violation to any specific person. *See* Dismissal Order at 10. "A § 1983 plaintiff must allege that a particular defendant, acting under color of state law, violated her rights." *Id.* (citing *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001)). Her Complaint attempted to connect three individuals—Hunt, Brewer, and Campbell—to alleged violations. And while her MTD Response argues that "each Defendant both collectively and individually" somehow violated her due process rights, *id.* at 3, that allegation is not found in the SAC. *See* Dismissal Order at 4 n.2 (citing *Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)). "As a general rule, a court considering a motion to dismiss must focus only on the allegations in the pleadings. This

does not include plaintiffs' responses to a motion to dismiss." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (internal quotation marks and citations omitted) (citing *Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)).

The allegations regarding unjust beauty-school inspections and license-renewal denial (or "shutting down Plaintiff's school," as characterized in the SAC) were comprehensively addressed in the Dismissal Order, at 9-12, based on a relatively robust set of facts, and will not be reconsidered on these more limited allegations. The law-of-the-case-doctrine precludes reconsideration of issues decided at an earlier stage of the case. *See Jaiyeola v. Toyota Motor Corp.*, No. 21-1812, 2022 WL 17819776, at *3 (6th Cir. June 16, 2022). Applying this doctrine is especially appropriate where Plaintiff points to no clear error in the Dismissal Order, and in fact, does not even address it or the deficiencies it outlined.

It is not entirely clear from the SAC what violation or conduct is involved in Defendants' purportedly "denying [Plaintiff] Board review." The first complaints alleged that in September 2022, the Board unjustly fined Plaintiff, that "Plaintiff made a timely request for an administrative appeal" within thirty days, Amended Complaint ¶ 80; Complaint ¶ 50, and that the appeal was ignored, Amended Complaint ¶ 81; Complaint ¶ 51. Judge Beaton addressed the allegations concerning this purported appeal. *See* Dismissal Order at 10. But the SAC makes no mention of an appeal at all; it only references emails Plaintiff sent to Defendants in this timeframe asking for clarification about the fines. SAC ¶¶ 28-32; *see also* Show Cause Response at 6 (discussing emails relating to unjust fines and "appeals"). A supporting exhibit likewise reveals no appeal or hearing request, only October 2022 emails advising Defendant Brewer that

Plaintiff would "be submitting a letter in writing to appeal this matter if that is what I need to do." SAC Ex. AA [DN 45-27]. The SAC does not allege that this letter-of-appeal was ever sent.[4]

The SAC also shines some light on the Amended Complaint's conclusory assertion that in October 2022, "Defendant Campbell unilaterally stopped the Plaintiff from applying for a new school, which was outside of the scope of her authority." Amended Complaint ¶ 83. Plaintiff now avers that she emailed Defendant Campbell in October 2022 "seeking guidance" about expanding her school into another building, and Campbell said she couldn't. SAC ¶¶ 20-27; *see also* SAC Ex. Z [DN 45-26] (October 2022 email with Campbell replying: "to be a part of the school and have proper oversight by staff it must be physically connected to be incorporated into the school floor plan on site").

Without an actual appeal or facts supporting violative conduct on the part of Campbell, the SAC merely alleges that because Defendants, the Board, or Campbell did not adequately respond to her email requests, *see* SAC ¶¶ 20-32, this constituted a "denial of Board review" and deprived Plaintiff of due process. It goes on to allege, without citation to authority, that "[d]ecisions regarding school extensions or approval of additional schools require Board consideration and are not within the unilateral authority of the Executive Director." SAC ¶ 25. A review of the statute relating to cosmetology "board duties" does not reveal any duty to provide legal advice in response to email requests. *See* Ky. Rev. Stat. § 317A.020. The SAC does not allege that Plaintiff pursued her request through proper channels, that she requested a hearing on

---

[4] A letter purporting to submit an appeal, based on a hearing that hadn't happened, or even been requested, might be a nullity under Kentucky law. Ky. Rev. Stat. § 317A.070(a) provides that the Board "shall hold hearings upon the request of any licensee or applicant directly affected by the board's decision to [issue a] fine," and a licensee "shall request a hearing within thirty (30) days of the board's notice[.]" "Rulings of the board as a result of any hearing may be appealed[.]"§ 317A.070(b).

the matter, or that she appealed any purported denial. *See* Ky. Rev. Stat. § 317A.070 ("Hearings; appeals"); *see also* Dismissal Order at 10 (The Complaint "never indicates that she invoked the available process by appealing that denial, even though Kentucky law gave her the right to do so. Because she apparently never requested a hearing[, she] can't complain about a process that was available and (apparently) adequate but unused[.]")

For these reasons, and those already announced by the Court, Count II should be dismissed.

3. **<u>Counts III-IV: "Retaliation (42 U.S.C § 1983)," "Civil Conspiracy (42 U.S.C § 1983)," "Negligence/ Gross Negligence, and "Tortious Interference," SAC ¶¶ 30-33, Fail to State a Claim, are Forfeited, and Otherwise Barred</u>**

After summarily addressing the statute of limitations, Equal Protection, and Due Process Clause arguments, Plaintiff's MTD Response stops short at just four pages. Her Show Cause Response adds additional arguments that "Defendants are not entitled to qualified immunity because they violated clearly established constitutional rights" and "acted under color of state law," *id.* at 10, which are bare legal conclusions that do not adequately address the issue, *see Grand v. City of Univ. Heights, Ohio*, 159 F.4th 507, 515 (6th Cir. 2025) (conclusory assertions insufficient to preserve argument); *cf. Iqbal*, 556 U.S. at 663 (legal conclusions in a complaint not well-pled). It also provides a laundry list of general grievances not clearly tied to any specific claim, *id.* at 1-8, and improperly attempts to supplement the SAC, *see Waskul*, 979 F.3d at 440. In any event, it fails to address the MTD arguments relating to Counts III-VI; neither Response even mentions retaliation, conspiracy, negligence, or tortious interference. "A party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of that argument." *KSA Enterprises, Inc. v. Branch Banking & Trust Co.*, 761 F. App'x 456, 463 (6th Cir. 2019);

*Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 946 (6th Cir. 2020); *Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989); *Everest Stables, Inc. v. Rambicure*, No. 3:15-CV-576-BJB, 2022 WL 2833996, at *3 (W.D. Ky. July 20, 2022). Defendants' arguments for dismissal have merit, and by failing to address them, Plaintiff effectively concedes that these Counts should be dismissed.

Moreover, the SAC does not attempt to cure the defects that were addressed in the Dismissal Order. Indeed, its factual support is far weaker than its predecessors'. The law-of-the-case-doctrine cautions against reconsideration here. *See Jaiyeola*, 2022 WL 17819776, at *3.

But even briefly considering their merits, these allegations fail to state a claim. Count III avers that "Defendants retaliated against Plaintiff for engaging in protected activity by escalating inspections and enforcement actions." SAC ¶ 30. It fails to connect any act (that could be considered materially adverse) to any specific defendant, say what protected activity she was engaging in, or draw a plausible connection between that activity and the adverse act. *See Helwig v. Pennington*, 30 Fed. Appx. 516, 519 (6th Cir. 2002). Counts V and VI, alleging negligence ("Defendants breached their duties to conduct fair, impartial, and lawful investigations, resulting in foreseeable harm to Plaintiff." SAC ¶ 32.) and tortious interference ("Defendants intentionally interfered with Plaintiff's student contracts and prospective business relationships." SAC ¶ 33.), are barred by Defendants' qualified-immunity defense, *see Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001) (public officers immune from liability for torts arising out of discretionary acts). Aside from the "Gross Negligence" label included with Count V, it is unsupported by factual allegations of wanton, malicious, or evil behavior. *See City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001); Dismissal Order at 12-15. Count IV, Civil Conspiracy, is not an

independent tort and requires underlying, unlawful, concerted action. *See James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002). Because the other claims fail, this claim fails with them.

## **Conclusion**

"Dismissal with prejudice is appropriate when 'the complaint could not be saved by an amendment.'" *Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 372 (6th Cir. 2024) (quoting *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.1 (6th Cir. 2021)), *cert. denied sub nom.,* 145 S. Ct. 1128, 220 L. Ed. 2d 422 (2025). Leave to amend should be freely given, absent circumstances such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal with prejudice is appropriate here.

Defendants argue that Plaintiff's failure to file a timely response, combined with her inadequate showing of good cause, *see* Show Cause Response at 2 (citing "lack of formal legal training"), should warrant granting the MTD or striking the Responses. Local Rule 7.1 requires that "a party opposing a motion must file a response within 21 days of service of the motion[,]" LR 7.1(c), a deadline Plaintiff concedes she missed, Show Cause Response at 2. "[W]hile *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, … there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) (considering plaintiff's pattern of delay). Were this missed deadline Plaintiff's only shortcoming,

it would probably be excused, as "this court prefers that claims be adjudicated on their merits[.]" *Id.* But it isn't.

In dismissing the Complaint and denying leave to file the Amended Complaint as futile, Judge Beaton allowed Plaintiff an opportunity to move for leave to amend again, but only if she could "do so consistent with Rule 11." Dismissal Order at 2. Rule 11 requires, at minimum, that contentions be grounded in fact, *see* Fed. R. Civ. P. 11(b)(3), and the "facts" that Plaintiff presents in her latest round of *pro se* filings are irreconcilable to say the least, *see Clay v. Howard Univ.,* 128 F. Supp. 3d 22, 27 (D.D.C. 2015) (finding irreconcilable variations in amended complaint unacceptable).

Despite having averred in three verified complaints that Defendants caused her cosmetology school to be "permanently closed," *see, e.g.,* Complaint ¶ 82; Amended Complaint ¶114; SAC ¶ 27, Plaintiff now admits that she temporarily closed it for "approximately one month," Show Cause Response at 6-7. Plaintiff first alleged that the last of Defendants' unjust inspections occurred in January 2023, Complaint ¶¶ 66–68, and then it was March 2023, Amended Complaint ¶ 113, and then July 2023, SAC ¶ 18, and finally December 2, 2023, which inspection she argues is still "ongoing" and "further extend[s] the timeline of Defendants' conduct" within the "one-year statute of limitations[,]" Show Cause Response at 8. Plaintiff provides no explanation—even in her Sur-Reply, after Defendants disputed the accuracy of this "revised timeline," Reply at 9—for why these purported investigations were not alleged in her earlier complaints. The SAC appears to be an impermissible "attempt by plaintiff to amend [her] pleading in order to avoid a dispositive defense[.]" *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd,* 356 F. App'x 535 (2d Cir. 2009); *Wallace,* 1996 WL 586797, at *2 ("[P]laintiff blatantly changes [her]

statement of the facts in order to respond to the defendants' motion to dismiss."); *cf. Crews v. Oak Grove Casino*, No. 5:22-CV-184-BJB, 2025 WL 2231780, at *5 (W.D. Ky. Aug. 5, 2025) (dismissing with prejudice where plaintiff offered no good explanation reconciling his IFP filings and factual allegations).

Plaintiff never moved for leave to amend. *Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 372 (6th Cir. 2024) (affirming dismissal where plaintiff "never moved to amend his complaints for the purpose of curing his statute of limitations deficiencies"), *cert. denied sub nom*. 145 S. Ct. 1128, 220 L. Ed. 2d 422 (2025). And despite multiple opportunities to cure deficiencies identified by the Court and Defendants, she still hasn't. *See Foman*, 371 U.S. at 182; *Pickett v. Eli Lilly & Co.*, No. 3:24-CV-478-BJB, 2025 WL 4227704, at *4 (W.D. Ky. Mar. 21, 2025) (dismissing with prejudice where, after having ample opportunity to brief limitation defense, plaintiff still pointed to no facts that could render complaint timely). The SAC lacks factual support and barely recites (some of) the elements of each cause of action. *See* SAC ¶¶ 28-33. "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 663. Allegations that Defendants "agreed to subject" Plaintiff to harsh treatment and business loss, "solely on account of discriminatory factors and for no legitimate" interest, are not well-pled. *Id.*; *see* SAC ¶¶ 28, 31 ("Defendants agreed and acted in concert to deprive Plaintiff of her constitutional rights" solely "based on race, treating Plaintiff differently than similarly situated white-owned schools[.]") This Court's "duty to be less stringent with *pro se* complaints does not require [it] to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979) (internal quotation marks and citation omitted).

## RECOMMENDATION

Because each claim in the Second Amended Complaint is either time-barred, unsupported by plausible factual allegations, or otherwise legally defective, the Magistrate Judge **RECOMMENDS** that the Court **GRANT** Defendants' Joint Motion to Dismiss, [DN 47], and **FURTHER RECOMMENDS** dismissal **WITH PREJUDICE**.

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

August 10, 2026

**Lanny King, Magistrate Judge**
**United States District Court**

C: Counsel; Courtney Hamilton *pro se*, 636 Oaks Country Club Road, Murray, KY 42701